# Staunton

## CLIFTON FORGE-WAYNESBORO TELEPHONE COMPANY, ETC. V. THE COMMONWEALTH, EX REL., ETC.

September 19, 1935.

Present, All the Justices.

The opinion states the case.

*W. M. Minter, Alfred J. Kirsh, Leon M. Bazile* and *M. A. ·Hutchinson,* for the appellants.

*J. M. Perry, John S. Eggleston, R. A. Van Orsdel* and *T. Baxter Milne,* for the appellee.

BROWNING, J., delivered the opinion of the court.

This is· an appeal from an order of the State Corporation Commission of Virginia entered on May 25, 1934. The certification required by law was made on Oct. 24, 1934.

The pertinent parts of the order which are elucidative of the questions which were at issue are· as follows:

"1. It appearing from the evidence that the Roanoke and Botetourt Telephone Company has had an established telephone pole line from Clifton Forge by way of Eagle Rock and Fincastle to a point near Roanoke for more than thirty years, and over which calls from Fincastle or Eagle Rock and terminating in Clifton Forge or Covington and vice versa are made, although such calls are admitted not to be entirely satisfactory, and that said line is, and has been for a number of years, practically paralleled by the

Chesapeake and Potomac Telephone Company of Virginia, which renders long distance service from Roanoke to Covington. And it further appearing that the Roanoke and Botetourt Telephone Company has leased said pole line to W. W. Gibbs for a period of twenty-five years from the 9th day of September, 1932, the Commission is of the opinion that it is without jurisdiction to prevent the Roanoke and Botetourt Telephone Company or the lessee thereof from making such improvements in this line as may be essential to adequately give the service now being rendered;

"It is therefore ordered, That the request of The Chesapeake and Potomac Telephone Company of Virginia, that W. W. Gibbs, lessee, be prohibited from making improvements essential to adequately give the service now being rendered by the said line be, and the same is denied;

"2. It appearing from the evidence that the defendants in this case propose to connect the Clifton Forge and Lexington Exchanges by a toll circuit or circuits by way of Long Dale, which will in fact duplicate the service now being rendered over present circuits of The Chesapeake and Potomac Telephone Company of Virginia, the Commission is of the opinion that there is no need for duplication of the present service at this time:

"It is therefore ordered, That the defendants in this case be and hereby are prohibited from making the said connection between the Clifton Forge and Lexington Exchanges:

"3. It further appearing that the defendants propose to connect the Lexington and Waynesboro Exchanges with a toll circuit or circuits which will parallel, for a considerable distance, the present long distance circuits of The Chesapeake and Potomac Telephone Company of Virginia, and will in fact duplicate the service now being rendered by the latter company, the Commission is of the opinion that the present service should not be duplicated."

The Clifton Forge-Waynesboro Telephone Co., Lexington Telephone Co., Natural Bridge Mutual Telephone

Company, Roanoke and Botetourt Telephone Company and W. W. Gibbs notified the Chesapeake and Potomac Telephone Company of Virginia by letter of the said W. W. Gibbs, as president of the telephone companies, controlling the telephone service in Waynesboro, Lexington, Buena Vista, Natural Bridge, Clifton Forge, Covington, and, through lease, the connecting lines of the Roanoke and Botetourt Telephone Company between Clifton Forge, Eagle Rock, Fincastle, Troutville, connecting with the lines of the C. and P. Company just outside of Roanoke, of their intention of making direct connection between the several lines and towns and controlling those towns by long distance circuits.

The reasons for this contemplated action were that the distance would be shortened, more efficient service would be secured through direct handling, the toll charges would be lessened and a material saving would be had to their subscribers as well as to themselves.

Thereafter the C. and P. Company filed a petition before the State Corporation Commission praying that the said telephone companies and W. W. Gibbs be enjoined and restrained from prosecuting their purpose as set forth.

The case was heard by the Commission upon the petition and answer of the defendants, and upon the testimony of witnesses for the petitioner and the defendants and numerous exhibits which were filed, and arguments and briefs of counsel.

The Commission granted the prayer of the petitioner, except as to the Roanoke and Botetourt Telephone Company, in which case the prayer was denied. Such action is shown by the above quoted portions of the order.

The Commission delivered its opinion through Hooker, chairman, and Commissioner Ozlin filed a dissenting opinion.

The assignments of error filed by the defendants are as follows:

"1. The action of the State Corporation Commission in assuming jurisdiction of the case, and, in entering the

order prohibiting your petitioners from connecting their several local telephone exchanges.

"2. The action of the State Corporation Commission in refusing to recognize that the petitioners already occupied the same territory claimed to be occupied by the Chesapeake and Potomac Telephone Co., and that the petitioners are entitled to grow and to increase their telephone facilities with needs of the communities they serve.

"3. The action of the State Corporation Commission in trying to qualify its order with reference to the Roanoke and Botetourt Telephone Company so as to restrain your petitioners from improving said line and its service, notwithstanding the holding of the Commission that it was without jurisdiction so far as related to the Roanoke and Botetourt Telephone Company and its lessee, W. W. Gibbs.

"4. The action of the State Corporation Commission in confiscating petitioners' property for the benefit of a private corporation, namely, The Chesapeake and Potomac Telephone Company.

"5. The action of the State Corporation Commission in prohibiting petitioners from connecting their Clifton Forge and Lexington exchanges.

"6. The action of the State Corporation Commission in prohibiting petitioners from connecting their Lexington and Waynesboro exchanges.

"7. That the several actions of the State Corporation Commission above complained of have the effect of depriving these petitioners of their property without due process of law, in violation of the Fourteenth Amendment to the Federal Constitution.

"8. That the several actions of the State Corporation Commission above complained of have the effect of depriving these petitioners of the equal protection of the law, in violation of the Fourteenth Amendment to the Federal Constitution."

We will not discuss these assignments *seriatin.* The

general observations which follow will make clear our conclusions.

■ The Commission has been held by this court to possess no inherent power, but all of its powers are derivative and must be based either on the Constitution, or upon statutes passed pursuant thereto.

Upon an inspection of section 156 (b) of the Constitution of Virginia, we find the source of the general powers of the Commission:

"The Commission shall have the power and be charged with the duty of supervising, regulating and controlling all transportation and transmission companies doing business in this State, in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses therein by such companies."

This provision certainly confers upon this arm of the State government plenary powers of supervision, regulation and control of transmission companies in all matters relating to their public duties.

Pursuant to this Constitutional provision the legislature of the State passed the act which is section 4055 of the Code, which in part is in these words: "and may prohibit the paralleling of the lines of one company by those of another company if in its judgment the efficiency of the service by either company or the public convenience will be injuriously affected."

The constitutionality of this and kindred statutes was brought in question in this court in the case of *Com.* v. *Staunton Mutual Telephone Co.*, 134 Va. 291; 114 S. E. 600, 603, in which it was held that the statute, which puts into effect powers of the Corporation Commission heretofore dormant, is not incompatible with section 156 (c) of the Constitution, stating that such powers must not be "inconsistent with this Constitution." It was further held in that case that a public service corporation, and a public utility within the meaning of the appropriate section of the Constitution, was subject to the control of the State Corporation Commission as to physical connection of its lines with

those of other telephone companies, although the service of the utility was not for hire, but for the benefit of members only.

█ We think there is no merit in the contention that the Commission is without jurisdiction to enter the order complained of and that section 4055 of the Code does not offend or contravene the Constitution of Virginia.

It must be kept in mind that the character of telephone service which is in issue here is long distance service. In contradistinction the appellants are, and have been for a long number of years, engaged in supplying their respective localities with local telephone service. They seek to connect their local lines so that they may obtain the long distance traffic between certain of their exchanges and terminal points such as Roanoke and Staunton. This long distance service was preempted by legal authority by the C. and P. Company years ago. The appellants were never accorded this right, indeed, they never sought or undertook to obtain it before. In the dissenting opinion filed by Commissioner Ozlin it is suggested that the appellants were the pioneers in the telephone field, in their localities, and have borne the burden of launching and developing new enterprises. This might be sentimentally persuasive and is commendably altruistic but the fact is that they were not pioneers in the character of service which they seek to obtain the right to render. On the other hand the C. and P. Company is the pioneer in that character of service in Virginia and the efficiency and adequacy of its service to the public is not questioned.

It is urged that the proposed connection of the appellant's lines, except to a negligible extent, will not physically parallel the lines of the C. and P. Company We think that the interpretation of the Commission as to the legal meaning of the word, "parallel," as used in the statute is sound. If the purpose of the appellants were effected their long distance traffic would be routed between the same points and terminals as are now reached

and served by the C. and P. lines and their lines would be in the same general direction.

" 'Parallel,' as used in the Const. Ill. art. 11, sec. 11, forbidding consolidation of parallel railroads, is not employed in its merely geographical sense. It does not mean two lines of railway that are equidistant from each other. It means lines of railway having the same general direction, and therefore likely to come in competition with each other." *East St. Louis Connecting Ry. Co.* v. *Jarvis,* 92 F. 735, 742, 34 C. C. A. 639; Words and Phrases, First Series, vol. 6, page 5164.

It will be noted that the provision of section 4055 of the Code, which gives to the Commission the power of prohibiting the paralleling of the lines of one company by those of another is conditioned upon the judgment of the Commission that the efficiency of the service by either company will be injuriously affected or the public convenience will be so affected.

The elements of the conditions imposed are in the disjunctive. The presence of either condition, in the judgment of the Commission, will justify its action.

The record affords a mass of testimony which is conflicting and tends to prove the theories advanced by each of the parties litigant.

We can not say, after a careful scrutiny of the entire record, that there is not credible and convincing evidence that the service of the C. and P. Company will be "injuriously affected."

The testimony is too voluminous to quote it here to any extent but we cite a bit of the testimony by S. F. Merriam, the general traffic manager of the C. and P. Company, a graduate electrical engineer:

"Q. Is there anything else in this matter which might be of material interest, or as to which I have not asked you which you would like to explain to the Commission?

"A. The business for traffic between the local companies involved, taking, just by way of example, the Clifton Forge-Lexington proposed route, would be approximately

twelve messages per day. It would not be feasible or probably possible to route any other traffic originating or terminating in those territories to increase that in any way. The only way it could be increased is for the C. and P. Company to agree to handle traffic out of the territory of that route. If that were done it would distort the whole plan area, the toll center scheme.

"Q. Until that was done, who would suffer, would not the public suffer?

"A. Normally, there would be an over-load if that was sent to Staunton, or if fed to Roanoke.

"Q. Would that result in delay in service or no service?

"A. It would result in delay in service. In addition, we would have to revise our routing instructions all through the country, which would be an expensive and costly process."

The testimony of C. E. Creecy, transmission engineer, of the C. and P. Company was to the effect that the plan of the appellants, if put into operation, would immediately upset the C. and P. Company's plan for toll centering in Virginia. This, and other testimony of a like character, and the testimony of the appellants in conflict therewith, makes the matter peculiarly an issue to be solved by the judgment of the Commission. It was created, and wisely so, by the State to determine just such an exigency.

The following cases are cited as authority in the premises:

*Norfolk & W. R. Co.* v. *Com.*, 148 Va. 630, 637, 139 S. E. 281, 283: "Under clause (f), section 156 of the Virginia Constitution, this court has jurisdiction to determine the reasonableness and justice of the actions of the Commission appealed from, but such action shall be regarded by the court as *prima facie* just, reasonable and correct. Unless this presumption is rebutted the judgment of the Commission must be affirmed."

In *Chesapeake & P. Telephone Co. of Va.* v. *Com. of Va.*, 147 Va. 43, 58, 136 S. E. 575, 579, it was said: "To their

findings (Public Service Commission's), then, must be ascribed the respect due to the judgments of a 'tribunal appointed by law and informed by experience'." *Illinois Cent. R. Co.* v. *I. C. C.*, 206 U. S. 441, 27 S. Ct. 700, 51 L. Ed. 1128.

In *Winchester, etc., R. Co.* v. *Com.*, 106 Va. 264, 267, 55 S. E. 692, 693, quoting with approval from *Norfolk, etc., Co.* v. *Com.*, 103 Va. 289, 294, 49 S. E. 39, it was said: "The State Corporation Commission, created by constitutional authority, is the instrumentality through which the State exercises its governmental power for the regulation and control of public service corporations. For that purpose it has been clothed with legislative, judicial and executive powers. * * *

"That the State has the inherent power of regulating and controlling public service corporations operating within her borders, and prescribing the facilities and conveniences which shall be furnished by them is no longer an open question in this country."

In *Hampton* v. *Newport, etc., Co.*, 144 Va. 29, 34, 131 S. E. 328, 329, quoting with approval from *Norfolk & W. R. Co.* v. *Public Service Commission*, 82 W. Va. 408, 96 S. E. 62, 8 A. L. R. 155, it was said: "We will not override the Commission's findings of fact where there is evidence upon which to base them."

In the same case, quoting from *Southern Ry. Co.* v. *Com.*, 124 Va. 36, 53, 97 S. E. 343, 348, it was held: "That this court will follow the mandate of the Constitution as contained in 156-f, 'that the action of the Commission appealed from shall be regarded as *prima facie* just, reasonable and correct.'"

It is suggested that the action of the Commission creates and perpetuates a monopoly which is in derogation of the spirit of our form of government. If so, the censure lies at the door of the legislature and the Constitution itself. This court is bound by its conception of the true interpretation of the provisions of the law.

██ We think there is no merit in the contention that the action of the Commission contravenes the Constitutional provisions inhibiting the taking of private property without just compensation or without due process of law or the deprivation of the equal protection of the law (Const. Va., sections 11, 58; Const. U. S., art. 14, section 1).

We affirm the judgment of the State Corporation Commission.

*Affirmed.*