## SOUTHWESTERN BELL TELEPHONE CO. v. UNITED STATES et al.

### No. 966.

District Court, W. D. Missouri, W. D.

May 28, 1942.

S. L. Harris, of Kansas City, and John Mohler and E. W. Clausen, both of St. Louis, Mo., for plaintiff.

Thurman Arnold, Asst. Atty. Gen., and J. C. Wilson, Sp. Asst. to Atty. Gen., Maurice M. Milligan, U. S. Atty., and Richard K. Phelps, and Thomas A. Costolow, Asst. U. S. Attys., all of Kansas City, Mo., for defendant United States.

Telford Taylor, General Counsel, of Washington, D. C. (Thomas E. Harris, Harry M. Plotkin, Daniel W. Meyer, and Benedict P. Cottone, all of Washington, D. C., of counsel), for defendant Federal Communications Commission.

Before RIDDICK, Circuit Judge, REEVES and OTIS, District Judges.

PER CURIAM.

The only question for decision in this case is whether the Federal Communications Commission has jurisdiction to regulate interstate interzone message rates in the Kansas City District Exchange Area of the plaintiff.

By an order dated May 28, 1941, the Commission claimed and asserted such jurisdiction. Thereupon the plaintiff brought this suit to enjoin the Commission from the exercise of its claimed jurisdiction. The facts are admitted, and it is upon the application of the law to such facts that the question of jurisdiction comes up for decision.

The plaintiff, in accordance with an approved policy and to meet the demands of an increasing population within the Kansas

City Area, including Kansas City, Kansas, and its vicinage, absorbed suburban and other nearby telephone exchanges, both in Kansas and Missouri and consolidated the entire service into the Kansas City District Exchange Area as of July 1, 1938. Prior to that time the public was served with an intercommunicating system involving the use of toll charges. Such services extended over an area both within Missouri and Kansas, and, in consequence, schedules of charges, classifications, practices, etc., were filed with the Federal Communications Commission.

After the establishment of the Kansas City District Exchange Area as of July 1, 1938, plaintiff canceled such schedules and denied the jurisdiction of the Commission over any part of its business within said area. In formulating a system for the Kansas City District Exchange Area the plaintiff divided such area into zones so as to classify its customers or patrons by location and at the same time created classifications by the services required, such as "business" and "residences." Certain flat rate privileges were also provided for its customers, whether business or residential. Its customers were accorded a flat rate to meet their requirements within the zones of their residence or location. For interzone communications, whether interstate or intrastate, message rates were prescribed and exacted in accordance with schedules filed and approved by the proper authorities in both the State of Missouri and the State of Kansas. This necessarily included the interzone messages which were at the same time interstate messages. Such charges, classifications and practices were approved by the authorities of the two states into whose areas the communication service extended.

The reason why the plaintiff denied the jurisdiction of the Federal Communications Commission over its interzone interstate service was because of the limitation or exception in paragraph (b), Section 221, Title 47 U.S.C.A. Such paragraph is as follows: "(b) Nothing in this chapter shall be construed to apply, or to give the Commission jurisdiction, with respect to charges, classifications, practices, services, facilities, or regulations for or in connection with wire telephone exchange service, even though a portion of such exchange service constitutes interstate or foreign communication, in any case where such matters are subject to regulation by a State commission or by local governmental authority."

It is contended by the defendant that, perforce the definition of "telephone exchange service" appearing as paragraph (r) of Section 153, Title 47 U.S.C.A., the limitation or exception of said paragraph (b) of Section 221, supra, is inapplicable. This definition is as follows: "(r) 'Telephone exchange service' means service within a telephone exchange, or within a connected system of telephone exchanges within the same exchange area operated to furnish to subscribers intercommunicating service of the character ordinarily furnished by a single exchange, and which is covered by the exchange service charge."

The defendant insists that the words "and which is covered by the exchange service charge" contain such a restrictive meaning as to make inapplicable said paragraph (b) of said Section 221.

These will be noticed.

1. Obviously it was the purpose of the Congress to exclude the jurisdiction of the Commission in situations precisely like the one here discussed. For instance, Senator Dill, Chairman of the Interstate Commerce Committee, when the Federal Communications bill was being considered, on the floor of the Senate, said: "We have attempted, in this proposed legislation, to safeguard State regulation by certain provisions to the effect that where existing intrastate telephone business is being regulated by a State commission, the provisions of the bill shall not apply. We have in mind, for instance, cases where a city has telephone service connecting into a number of states, such as we have right here in Washington, running out into Maryland and out into Virginia, and in New York the service runs into New Jersey, and I think perhaps into Connecticut, though I am not sure about that. There are many cases in the country where, without some saving clause of that kind, the State commissions might be deprived of their power to regulate; and the State Commission representatives were jealous, in the preparation of this bill, that those rights should be protected; and we have attempted to do that."

Again, Senator Dill said, at a later date: "I think nothing in this bill would seriously restrict in any way, unless it might be in connection with the exchanges of the city which run out into the States. We have attempted in the bill to avoid even that restriction. I think the occasion for the suggestion being made to the Senator is that in the House amendment there was a provi-

sion, in the form of a definition, which would have given the commission control of the telephone and telegraph rates in the District of Columbia, but the House receded on the provision; so that, as far as we can know, we believe the power of the District of Columbia will not be interfered with."

█ It being obviously the intention of the Congress to limit the jurisdiction of the Commission over cases of this kind, neither the Commission nor the courts should by too strict and narrow a construction of the law defeat such a clear intention.

2. Adverting to the clause which takes away the jurisdiction of the Commission, the following language is significant: "Nothing in this chapter shall be construed to apply, or to give the Commission jurisdiction, with respect to charges, classifications, practices, services, facilities, or regulations for or in connection with wire telephone exchange service, even though a portion of such exchange service constitutes interstate * * * communication."

This provision properly assumes that within an Exchange area, such as Kansas City, there would be charges, classifications, practices, services, facilities and regulations. The implication that telephone patrons would be charged in accordance with reasonable and fair schedules of charges is so strong as to challenge a contrary inference. It could not be logically argued that those residing in outer zones of an extensive area would be entitled to the identical privileges as those residing within the central zones of such area. Moreover, special and extraordinary services may carry, as in this case, a message charge without imperiling the exemption clearly contemplated by the Congress.

█ 3. The definition heretofore given of "telephone exchange service" applies perfectly to the Kansas City District Exchange Area. Such definition described with precision that involved in this case. The Commission, however, seeks to defeat the exemption or limitation and reassert its jurisdiction by a strict construction of the words: "and which is covered by the exchange service charge." The interpretation of these words should be made in the light of the context and language that goes before and afterwards in other parts of the law. In like manner, they should be interpreted in the light of the language contained in the exemption clause itself. If

the meaning contended for by defendant should be ascribed to this language, then the Congressional exemption would be defeated. The legislation would have been in vain, and the effort to recognize local supervisory authority would have been a mere gesture and a sham and deception.

█ The word "charge" does not invariably signify the singular. Webster defines it, when appertaining to the subject of "cost" as follows: "Pecuniary burden; whatever constitutes a burden on property, as rents, taxes, liens, etc; expense incurred, as maintained at great charge."

In the light of the context it would be entirely proper to give the sentence a meaning as follows: "And which is covered by the exchange service charge" according to the charges, classifications, practices, services, facilities or regulations of the exchange.

█ 4. The plaintiff, according to the agreed statement of facts, has the approval of its charges and classifications by the proper authorities of both Missouri and Kansas. This is a practical interpretation of the right of the central exchange to classify its customers and patrons and provide zones as a basis for fixing its compensation for services rendered. The plaintiff did what it had a right to do under the law. In thus acting it followed a course of action or a policy well understood and recognized. The Congress must have had this in mind when it provided the exemption from federal supervision.

█ 5. If the contention of the Commission is correct, then the division of the area into zones would be futile. The object of such division was to create classifications as a predicate for appropriate and compensatory charges. The decision of the Commission harks back to the toll rates existing before the formation of the district. It was upon these that the Commission originally exercised jurisdiction. It justifies its present claim upon the theory that such tolls have not been abolished. This contention is without substance in view of the statutory definition of "telephone toll service." Section 153, Title 47 U.S.C.A., gives a legal meaning to "telephone toll service" as follows: "(s) 'Telephone toll service' means telephone service between stations in different exchange areas for which there is made a separate charge not included in contracts with subscribers for exchange service."

There was an undoubted purpose in this definition. It undertook to protect a single exchange area from the identical contention now being urged. It was defined to mean "service between stations in different exchange areas." That would exclude message charges within a single exchange area. Moreover, the remaining portion of the definition contemplated message charges within an exchange area. A toll charge is not only between different exchange areas but it is a service "for which there is made a separate charge not included in contracts with subscribers for exchange service." In this case each subscriber understands by his contract with the plaintiff exactly what his message charges will be from zone to zone.

Upon the facts and under the law the Federal Communications Commission by its order seeks to exercise jurisdiction not possessed by it. The plaintiff is entitled to the relief sought in its complaint, and a decree granting such relief should be entered.