134 N.W.2d 42 (1965)
178 Neb. 454
In the Matter of Herbert J. SHERDON, Director of Communications, Lincoln, Nebraska.
Herbert J. SHERDON, Appellee,
v.
AMERICAN COMMUNICATION COMPANY, BELLEVILLE, KANSAS, Appellant,
Impleaded with Deshler Telephone Company, Deshler, Nebraska, Appellee.
No. 35842.
Supreme Court of Nebraska.
March 19, 1965.
*43 Baylor, Evnen, Baylor & Urbom, J. Arthur Curtiss, Lincoln, for appellant.
Clarence E. Danley, Lincoln, for Sherdon.
Arnold E. Rawn, Deshler, for Deshler Telephone Co.
Heard before WHITE, C. J., and CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.
McCOWN, Justice.
This was an action before the Nebraska State Railway Commission instituted by a complaint filed by the director of communications of the commission, to establish a telephone service area boundary between the two defendants under the authority of Section 1.6, Article 3, Chapter V, of the rules and regulations of the commission. The commission entered an order sustaining the formal complaint, revising the service areas of the defendants, and ordering them to file revised telephone service area maps. The defendant, Deshler Telephone Company did not file an answer or otherwise *44 respond and the defendant American Communication Company has appealed.
On June 9, 1956, the Nebraska State Railway Commission entered its order granting an application to transfer the Byron Telephone Company properties to American Communication Company and approving an area map and granted a certificate of public convenience and necessity to American Communication Company to serve the area set forth in the map. At that time all seven subscribers in the area later to be disputed had Byron service. The service was "extended area service" to Deshler, sometimes called "free service." In the spring of 1958, the commission ordered that extended area service be discontinued upon conversion to dial operation. American Communication Company rehabilitated its lines and installed a new dial system at considerable expense in the spring of 1958. Upon actual conversion to dial service, "free service" between Deshler and Byron was discontinued as ordered by the commission. Some of the seven Byron subscribers involved here removed their telephones in preference to payment of the nominal toll charge for a Deshler call.
In 1959, the Legislature enacted section 86-214, R.S.Supp., 1959, now section 75-605, R.S.Supp., 1963, and the commission promulgated Chapter V, Article 3, section 1, of its rules and regulations, all relating to the requirement of commission approval of boundary changes and the filing of maps showing such changes. The American Communication Company and Deshler Telephone Company on March 27, 1961, and August 9, 1960, respectively, filed their territorial maps. The American Communication Company map was identical, as to the area now disputed, to that which had been approved by the commission upon transfer of the Byron Telephone Company properties some 4 years before. The commission had never changed the boundary, nor had American Communication Company ever requested any change. The Deshler Telephone Company filed a map showing a boundary which extended into the American Communication Company territory, and included the seven former Byron Telephone Company subscribers. The Deshler Telephone Company had never before claimed the territory, nor had the matter been presented to the commission. The territory had never been requested by Deshler Telephone Company nor had any application for it ever been filed. The Deshler Telephone Company simply filed the map with knowledge that it was invading the Byron Telephone Company territory. American Communication Company had no knowledge that such a map had been filed. Although the disputed area became apparent to the commission on August 9, 1960, when the Deshler Telephone Company map was filed, no action was taken by the commission at that time. American Communication Company was not informed of the Deshler Telephone Company claim. The Deshler Telephone Company was not reminded nor asked to correct its encroachment. The matter lay dormant until May 8, 1963, when Mr. Kahle, one of the seven former subscribers of Byron Telephone Company, visited the commission. A field investigation was ordered and completed the following day with the assistance of Mr. Kahle, as a direct result of which the complaint was filed. There is no indication that either of the two defendants had any advance notice of the complaint nor that they were requested or given the opportunity to resolve the dispute by agreement. The hearing was held pursuant to the notice.
The disputed area was a rural area approximately three miles long by three-quarters of a mile wide plus the north half of Section 14, Township 1 North, Range 4 West of the 6th P.M. Of the seven persons living in the disputed area, two were receiving telephone service from the Deshler Telephone Company on lines which they installed themselves. The Deshler Telephone Company had no agreement with American Communication Company and had served one of the subscribers since 1960, but this service encroachment was not *45 explained. Two of the subscribers were receiving telephone service from the American Communication Company and three did not have any telephone service at all, although all seven had had Byron Telephone Company service prior to the transfer to American Communication Company of the Byron Telephone Company properties. Mr. Sherdon was a principal witness. He did not know whether or not any of the existing service was reasonably adequate, nor whether or not subscribers who have no phone would have reasonably adequate service if they requested it in the approved service area in which they were all situated. He testified that there would be no duplication of the existing Byron Telephone Company facilities if such facilities were removed and a Deshler Telephone Company line installed in their place. He stated that the boundary line proposed by him would be in the public interest because it was not contrary to the public interest and because it would enable the subscribers to call those with whom they transact business without paying a toll charge. His compromise boundary would put six of the seven people in the disputed area into the Deshler Telephone Company territory and leave only one subscriber in the Byron Telephone Company territory. The testimony of the individuals, who had signed a letter to the commission generally indicating that they desired to have telephone service from the Deshler Telephone Company, was essentially the same. They felt that the Deshler Telephone Company service would be more convenient than a Byron Telephone Company phone because they did more business and had more social and personal relationships in Deshler than in Byron. Essentially, however, it can reasonably be said that the 10 or 15 cent toll charge to call from the Byron exchange to Deshler was the inconvenience they were referring to. Only two witnesses made any reference to inadequacies of the Byron Telephone Company service. One of those was once unable to place a call from a booth in Chester, Nebraska, when the lines were wet. Chester is not in or near the disputed service area. The other witness complained of poor service at a time before American Communication Company acquired the Byron properties. Witnesses for American Communication Company testified that the company was willing, able, and desirous of furnishing, upon request, the latest dial telephone service to subscribers in the disputed area. American Communication Company had never requested to be relieved of any of the disputed area nor had it acquiesced in the use or invasion of the territory, nor relinquished any part of it. They also testified as to the location of the existing facilities, the number of subscribers the circuit now served, and the number it is capable of serving; as to the decrease in income and in the rate of return resulting from the loss of four subscribers; and as to the cost of constructing the existing facilities.
The order of the commission revised the service areas of the two defendants in accordance with the prayer of the complaint and ordered the defendants to file revised service area maps. The necessary result of this order is to revoke in part American Communication Company's certificate of convenience and necessity granted to it by the commission in 1956 and also to enlarge the service area of the Deshler Telephone Company into the area formerly served by the Byron Telephone Company, now American Communication Company. This court has held that where the Legislature enacts specific legislation implementing Article IV, section 20, of the Constitution, the Nebraska State Railway Commission is subject to and governed by the provisions of such enactment. Neuswanger v. Houk, 170 Neb. 670, 104 N.W.2d 235. Although that case involved a certificate of public convenience and necessity of a motor carrier, this court held that the applicable statute was specific legislation with regard to a particular subject and that the commission, in order to revoke, change, or suspend the certificate, must proceed in accordance with the statute.
*46 Section 75-604, R.S.Supp., 1963, originally section 86-213, R.S.Supp., 1961, was enacted in 1951, except for subdivision (3) which was enacted in 1961. This is also a specific statute which relates to a particular subject which, in its case, is the authorization of territorial boundaries between telephone companies. It provides as follows: "No person, firm, partnership, corporation, cooperative, or association shall offer telephone service or shall construct a new telephone line in or extend an existing telephone line into the territory of another telephone company without first making an application for and receiving from the commission a certificate of convenience and necessity, after due notice and hearing under the rules and regulations of the commission. Before granting a certificate of convenience and necessity, the commission must find that (1) the territory in which the applicant proposes to offer telephone service is not receiving reasonably adequate telephone service, (2) that the portion of the territory of another telephone company in which or into which the applicant proposes to construct new lines or extend its existing lines is not and will not within a reasonable time receive reasonably adequate telephone service from the telephone company already serving the territory, or (3) the application is agreeable to the subscriber or subscribers and to both telephone companies involved in the matter, will not create a duplication of facilities, and is in the interest of the public and the party or parties requiring telephone service." The statute serves two functions. The first is to provide that a company must obtain a certificate of convenience and necessity before encroaching upon the territory of another company. The second is to define the specific finding the commission must make before granting such a certificate of convenience and necessity. It is clear that the invasion by a telephone company of the territory of another telephone company, either in service or construction, was intended to be prohibited unless the invading company first applied for and received a certificate of convenience and necessity.
The cases in which the statute has been considered reach the same conclusion. In the case of Kopf v. Public Telephone Co., 173 Neb. 96, 112 N.W.2d 521, the petitioners were individuals who requested the commission to assign their area into the service area of the Northwestern Bell Telephone Company of Lexington. This court in considering section 75-604, R.S.Supp., 1963 (which was then section 86-213, R.R.S. 1943), reversed the commission order permitting the petitioners to obtain telephone service from any operating company of their choice within the area.
Buhr v. Glenwood Tel. Membership Corp., 177 Neb. 164, 128 N.W.2d 607, involved a similar situation. The commission granted the request in that case and, as it did here, ordered both companies to file revised service area maps. In reversing the order of the commission, this court said: "We point out that under the quoted statute the grant of a certificate of convenience and necessity to permit one telephone company to invade the certificated area of another may be granted only upon the application of the invading company for a certificate of convenience and necessity." The court also held: "We hold that the commission was without authority in law to entertain an application by Buhr for the grant of a certificate of convenience and necessity to Lincoln Telephone. Any such authority to grant a certificate of convenience and necessity to invade the certificated area of another telephone company must be on the application of the invading company for a certificate of convenience and necessity in accordance with section 86-213, R.S.Supp.1961."
In the two cases cited action was instituted by telephone subscribers and not by the application of either company involved. In this case it is clear that the complaint was initiated when one of the former subscribers visited the commission concerning his desire to receive telephone service from Deshler and the commission obtained the letter from the other subscribers. The filing of a complaint by the commission or by its director of communications no more *47 meets the statutory requirements of section 75-604, R.S.Supp., 1963, than the "request" in the Kopf case, supra, or the "letter" in the Buhr case, supra.
The Nebraska State Railway Commission has no power to order a telephone company to extend its service into the certificated service area of another company unless such telephone company has first applied for and received a certificate of convenience and necessity.
In this case, the Deshler Telephone Company filed no application or petition, did not answer nor file a pleading, and made no formal request that it be permitted to serve the area in question. It is clear the subscribers in the area initiated the request. In the Kopf case, supra, the court said: "These statutory provisions permit the extension of service by one company into the service area of another but they do not permit the commission to require such extension." The court also said: "No statute has been referred to which imposes any such requirement. Any effort of a telephone company to enter the territory of another is subject to action of the commission but the matter of compulsory entrance into occupied or unoccupied territory does not appear to have received legislative attention."
In the Buhr case, supra, this court stated: "Under section 86-213, R.S.Supp.1961, the only way that a telephone company may properly invade the certificated area of another is by its filing of an application for a certificate of convenience and necessity, and establishing a right thereto in conformity with the provisions of the act. Such an invasion by a telephone company of the certificated area of another may not be granted on request of a user who prefers the service of the invading company. This is made abundantly clear by our holding in the Kopf case."
The commission in the case now before the court had no more authority to direct the Deshler Telephone Company to enter the disputed area than it did to order American Communication Company to vacate the area.
Since the action of the commission was in violation of section 75-604, R.S.Supp., 1963, its order is void and of no effect. The order of the commission is reversed.
Reversed.