IN RE APPLICATION OF CHAMBERS RURAL TELEPHONE COMPANY, INC.
CHAMBERS RURAL TELEPHONE COMPANY, INC., APPELLANT, v. K. & M. TELEPHONE COMPANY, INC., APPELLEE.
140 N. W. 2d 400

Filed February 18, 1966. No. 36076.

Nelson, Harding & Acklie and Max G. Towle, for appellant.

Leo F. Clinch, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

BOSLAUGH, J.

This is an appeal in a proceeding before the Nebraska State Railway Commission upon an application of the Chambers Rural Telephone Company, Inc., for a certificate of public convenience and necessity authorizing it to operate as a wire common carrier of messages in Garfield, Holt, and Wheeler Counties, Nebraska. A protest to the granting of the application was filed by the K. & M. Telephone Company, Inc. The railway commission denied the application. The applicant's motion for rehearing was overruled and it has appealed.

The applicant is a corporation which was organized on September 8, 1964. Its stockholders are five service station companies, or switching companies, known as South Fork Telephone Company, East Division; Lone Tree Telephone Company; Bliss Martha Telephone Company; Dumas Telephone Company; and Short Line Tele-

phone Company. The service station companies owned their own telephone facilities, except a switchboard, and received switching service from the protestant.

The protestant is a common carrier furnishing telephone service at Chambers, Nebraska, and the rural area adjacent thereto. The protestant serves approximately 416 subscribers, of which 189 are service station subscribers. The service station subscribers receive telephone service through the facilities of the applicant except for switching service which is provided by the protestant.

At the time the application involved in this proceeding was filed, an application filed by the protestant was pending before the railway commission. The protestant proposed to make changes, improvements, and additions in its service and service area. With respect to service station subscribers, the protestant proposed to offer improved service upon a voluntary and company owned basis. The application of the protestant was granted in part, but the commission did not authorize the protestant to offer service to its service station subscribers upon a company owned basis. An appeal to this court from the order of the commission in that proceeding was perfected and was consolidated with this appeal for briefing and argument. See K. & M. Telephone Co., Inc. v. Schmidt, *post* p. 742, 140 N. W. 2d 404.

The protestant is a corporation owned by Kenneth Werner, his wife, and two children. It is the successor to the Chambers Independent Telephone Company, a sole proprietorship owned by Werner. In June 1952, Werner entered into a contract with South Fork Telephone Company, Lone Tree Telephone Company, Bliss-Martha Telephone Company, and Lyle-Dumas Telephone Company, four mutual telephone companies then serving Chambers, Nebraska, and surrounding territory. The contract provided that Werner would construct and operate a dial switchboard in Chambers, Nebraska, and supply telephone switching service to the mutual com-

panies; and that the mutual companies would assign their franchise rights within the village of Chambers to Werner and remove their equipment from within the corporate limits of Chambers.

In September 1952, the railway commission granted a certificate of convenience and necessity to Werner doing business as Chambers Independent Telephone Company. The commission found that Werner had entered into the agreement with the four mutual companies and that Werner proposed to provide switching service to the four mutual companies pursuant to the agreement.

On January 27, 1953, the railway commission established initial rates for the telephone exchange service to be furnished by Werner. The annual rate for service station service was established at $10.50. On March 18, 1955, the railway commission increased the annual rate for service station service to $15.60. The protestant's present rate for this service is $2.90 per month.

In 1959, the Legislature enacted what is now section 75-605, R. S. Supp., 1963, which requires anyone operating an exchange offering telephone service in Nebraska to file with the railway commission a map of the territory in which local exchange telephone service is offered. The rules of the commission provide that the exchange area of a telephone company shall include all subscribers receiving telephone service whether over company owned or service station facilities.

On April 24, 1961, Werner filed with the railway commission a map of the territory in which local exchange telephone service was then offered, including service station service. On June 28, 1961, the protestant, as successor to Werner, was granted a certificate of convenience and necessity to serve the area set forth in the exchange area map filed on April 24, 1961. On September 11, 1963, protestant was authorized to revise its service area to include an additional subscriber.

The object and purpose of commission control of common carriers is to secure adequate, sustained service for

the public at the lowest reasonable cost and to protect and conserve investments made for that purpose. Chicago, B. & Q. R.R. Co. v. Stamford Elevator Co., *ante* p. 470, 138 N. W. 2d 816. In determining whether a certificate of convenience and necessity should be issued, the commission may consider whether the applicant is able or qualified to furnish the proposed service.

In this proceeding the commission found that the primary issue was whether the applicant was qualified to operate a telephone system as a common carrier. The commission made the following specific finding in that regard: "No financial statements or projected financial data were submitted in evidence. There was testimony to the effect that the company had commitments from banks for loans up to $25,000.00, but the security required and other requirements were unknown. The cost of installing a switchboard was estimated at $29,700.00. Applicant's witnesses did not know what rate would be required or what their operating expenses might amount to. Applicant plans to employ a local man presently engaged in television and radio repair to maintain its telephone system. This prospective employee has had no experience in the telephone business and would require training."

This finding is fully supported by the record. The applicant had not obtained engineering advice as to the design, construction, or operation of a system and had not developed a definite plan. The applicant did not know what its financial requirements would be or what rates would be required in order to operate the system.

The commission also found that the service rendered by the protestant was adequate. This finding is sustained by the record.

The protestant holds a certificate of convenience and necessity which authorizes it to provide service station service in the area in which the applicant seeks authority to operate as a common carrier. Section 75-604, R. S. Supp., 1963, provides: "No person, firm, partnership,

corporation, cooperative, or association shall offer telephone service or shall construct a new telephone line in or extend an existing telephone line into the territory of another telephone company without first making an application for and receiving from the commission a certificate of convenience and necessity, after due notice and hearing under the rules and regulations of the commission. Before granting a certificate of convenience and necessity, the commission must find that (1) the territory in which the applicant proposes to offer telephone service is not receiving reasonably adequate telephone service, (2) that the portion of the territory of another telephone company in which or into which the applicant proposes to construct new lines or extend its existing lines is not and will not within a reasonable time receive reasonably adequate telephone service from the telephone company already serving the territory, or (3) the application is agreeable to the subscriber or subscribers and to both telephone companies involved in the matter, will not create a duplication of facilities, and is in the interest of the public and the party or parties requiring telephone service."

Before the railway commission can issue a certificate of convenience and necessity allowing one telephone company to invade the service area of another, it must make the specific finding required by section 75-604, R. S. Supp., 1963. Sherdon v. American Communication Co., 178 Neb. 454, 134 N. W. 2d 42.

The application filed in this proceeding recites: "It is proposed that applicant, as a corporation, by contract agreement arrange a continuation of switching or connecting line service with K. & M. Telephone Company as provided by Section 75-607, R. R. Nebr. 1943, as amended, and on such terms and conditions as this Commission shall find just and reasonable." The president of the applicant testified that if a certificate was issued to the applicant, it would be willing to enter into a contract with the protestant for switching service "if we

could reach an agreement"; and that if an agreement could not be reached or the protestant was unwilling to do business with the applicant, the applicant proposed to build and operate its own switchboard.

One of the purposes of requiring a certificate of convenience and necessity is to prevent unnecessary duplication of facilities and to protect the consuming public from inadequate service and higher rates which may result from such duplication. See 73 C. J. S., Public Utilities, § 42, p. 1097.

If the applicant were authorized to build its own switchboard, there would be a duplication of facilities in a certificated area in which reasonably adequate telephone service is available and is being furnished and without the agreement of a telephone company involved in the matter.

The record further shows that such a result would not be in the interest of the public or the parties requiring telephone service. At the present time the service station subscribers are able to call any station in Chambers, Nebraska, or in O'Neill, Nebraska. If the applicant were authorized to build its own system and switchboard, calls to Chambers, Nebraska, would become toll calls. Connection with Bell Telephone long distance lines is available to the service station subscribers through the protestant's switchboard.

A part of the applicant's brief is devoted to a discussion of a provision in the 1952 contract between Werner and the four mutual companies which related to the right of the four mutual companies to "divorce themselves from the facilities" of the protestant's switchboard in the event Werner desired to sell his telephone system. The contract further provided that Werner would give the four mutual companies the "opportunity of purchasing the property at an agreed price, should they so desire." The applicant claims that the incorporation of the protestant and the transfer of the property by Werner to the protestant was a sale of the system and that

the contract is no longer binding upon the applicant.

The commission made no determination in regard to this contention of the applicant. So far as this proceeding is concerned, the significant fact is that the protestant holds a certificate of convenience and necessity to furnish switching service to service station subscribers in the area. If the applicant has any claim against Werner or the protestant as a result of the contract, it should be adjudicated in a proper action brought for that purpose.

On appeal to this court from an order of the Nebraska State Railway Commission while acting within its jurisdiction, the question for determination is the sufficiency of the evidence to prove that the order is not unreasonable or arbitrary. Andrews v. Nebraska State Railway Commission, 178 Neb. 799, 135 N. W. 2d 712. The record in this case sustains the order of the commission and it is affirmed.

AFFIRMED.