NORTHWESTERN BELL TELEPHONE COMPANY, A CORPORATION, APPELLANT, V. CONSOLIDATED TELEPHONE COMPANY OF DUNNING, A CORPORATION, APPELLEE.
142 N. W. 2d 324

Filed May 6, 1966. No. 36168.

Edward Sklenicka, Walter D. James, Jr., and Edward F. Barnicle, Jr., for appellant.

Charles F. Adams and Larry G. Carstenson, for appellee.

Heard before CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and BURKE, District Judge.

McCOWN, J.

This case involves the question of whether a telephone company holding certificates of public convenience and necessity for furnishing local exchange service to a number of communities within an overall area can displace an existing long distance telephone common carrier service and duplicate long distance facilities between

its own local exchanges and exchange areas.

The defendant, Consolidated Telephone Company, furnishes the local exchange service to the municipalities of Merna, Anselmo, Dunning, Thedford, Seneca, Mullen, Brewster, and Brownlee. Complainant, Northwestern Bell Telephone Company, owns lines and furnishes local and long distance telephone service in many areas throughout the State of Nebraska. Hereafter, they will be referred to as Consolidated and Northwestern respectively. One of Northwestern's long distance toll lines extends northwest from Broken Bow to Mullen, Nebraska, and for over 40 years has furnished long distance service to the local exchanges now owned by Consolidated at Merna, Anselmo, Dunning, Thedford, Seneca, and Mullen; and also, to Purdum, where the local exchange is not owned by either party. Brownlee and Brewster are local exchanges owned by Consolidated receiving long distance service over Consolidated owned lines which connect with Northwestern's toll line at Thedford for Brownlee toll, and at Dunning for Brewster toll. In addition, Consolidated furnishes extended area telephone service between Seneca, Brownlee, and Thedford, and between Merna and Anselmo; and plans extended area service for Halsey and Dunning. Extended area telephone service is toll free service between two or more exchanges which is furnished to the subscribers for the exchange service charge.

On August 27, 1963, Consolidated filed an application for authority to borrow $400,000. Among the purposes of the borrowing were the establishment of a separate toll circuit and extending trunk and toll lines to the edge of its exchange areas. Northwestern formally protested this application upon the ground that a large part of the proposed investment would duplicate and render valueless Northwestern's investment in toll plant in the area. On the same date, Consolidated also filed an application to establish message toll tariffs between Consolidated's exchanges not served by extended area

service. The application for borrowing was continued on motion of Consolidated, but on February 5, 1964, the commission entered an order authorizing Consolidated to establish extended area service as set forth in its application, and authorizing it to establish a local exchange tariff, a general exchange tariff, and a message toll service tariff between those of its exchanges which are not connected by extended area service. On February 27, 1964, Northwestern filed a complaint requesting an order prohibiting Consolidated from building or establishing a toll line or facility which would duplicate Northwestern's toll facility.

Sometime prior to August 5, 1964, Consolidated had constructed a new line between Seneca and Thedford. On August 3, 1964, Consolidated notified Northwestern that the Seneca exchange would start dial operation on August 5, 1964, and that long distance service to Seneca subscribers would be furnished over two circuits which would also handle the extended area service, and the new point of connection with Northwestern's toll line for long distance service to and from Seneca would be at Thedford.

The evidence shows no inadequacy of toll service over Northwestern's lines. The present toll arrangements by Consolidated for Seneca are inadequate, and the evidence is also uncontradicted that combining extended area and toll circuits into one group does not conform to present traffic practice and results in unsatisfactory service both by reason of the stimulation factor of extended area service, and the problems of noise and increase in volume gain. On June 30, 1965, the commission entered its findings. Among them it stated that from a billing standpoint, extended area service is more comparable to local service, but from the standpoint of physical plant, the service is quite similar to toll service. The commission also found that it appears reasonable that Consolidated be entitled to construct lines within its territory connecting its exchanges without

prior approval of the commission, whether calls between said exchanges are paid for as part of the monthly rental or individually. The amended complaint of Northwestern was dismissed, and this appeal followed.

Section 75-604, R. S. Supp., 1963, provides in part: "No person, firm, partnership, corporation, cooperative, or association shall offer telephone service or shall construct a new telephone line in or extend an existing telephone line into the territory of another telephone company without first making an application for and receiving from the commission a certificate of convenience and necessity, after due notice and hearing under the rules and regulations of the commission."

It is essentially the position of Consolidated, and apparently of the commission, that a telephone company having only a toll line "has no territory," and that section 75-604, R. S. Supp., 1963, does not apply. The contention is that certificates for multiple local exchanges and the filing of exchange area maps establish the territory and the authority to furnish both exchange service in, and toll service between, all the exchanges of a company, even though the toll service duplicates the existing toll service and lines of another common carrier telephone company. This implies that there is no longer any distinction between toll service and local exchange service and that the same geographic territory cannot be the territory of one local exchange company and at the same time be the territory of a separate toll telephone company. A telephone toll line in service obviously serves a "territory" and the extent of the territory served is a question of fact. See Mountain States Tel. & Tel. Co. v. Suburban Tel. Co., 72 N. M. 411, 384 P. 2d 684. For over 40 years this territory along this telephone toll line has been Northwestern's toll line territory.

Traditionally in the telephone industry there have been two well-defined branches of the business, one the long distance system and the other the local exchanges.

See 86 C. J. S., Tel. & Tel., Radio & Television, § 4, p. 15. The Federal Communications Act contains specific definitions both of telephone exchange service and telephone toll service. Title 47, U. S. C. A., § 153, p. 67, provides in part: "(r) 'Telephone exchange service' means service within a telephone exchange, or within a connected system of telephone exchanges within the same exchange area operated to furnish to subscribers intercommunicating service of the character ordinarily furnished by a single exchange, and which is covered by the exchange service charge.

"(s) 'Telephone toll service' means telephone service between stations in different exchange areas for which there is made a separate charge not included in contracts with subscribers for exchange service."

The character and classification of extended area service in this situation as between these two branches of telephone service is critical. Extended area service, under the above definitions and under the definitions of courts of other states, is exchange service and not toll service. See, Barnes v. Arkansas Public Service Commission, 235 Ark. 683, 362 S. W. 2d 1; Ohio Central Tel. Corp. v. Public Utilities Commission of Ohio, 166 Ohio St. 180, 140 N. E. 2d 782; Southwestern Bell Tel. Co. v. United States, 45 F. Supp. 403.

Even though extended area service may replace toll service between the particular local exchanges connected, it does not eliminate the need for toll lines leading to a toll center under modern telephone practice. The extended area service is exchange service and the toll carrier cannot justifiably object, nor does Northwestern here. The justifiable complaint arises when toll lines and service are duplicated, either by the use of extended area circuits for toll purposes, or by the construction or addition of toll circuits or facilities. It is important to note that Consolidated does not propose to merge the Seneca and Thedford exchanges, but has maintained the identity of the Seneca exchange as a

separate exchange, including its status as a toll point for municipalities other than Thedford or Brownlee. The exchange areas are not merged for toll purposes. Under such circumstances, Consolidated did not have the right to unilaterally change the point at which it exchanges long distance messages with Northwestern when the effect is to impair or destroy the value of the toll company's lines and business.

This court has said that the object and purpose of commission control of common carriers is to secure adequate sustained service for the public at the lowest reasonable cost, and to protect and conserve investments made for that purpose. Chambers Rural Tel. Co., Inc. v. K. & M. Tel. Co., Inc., 179 Neb. 735, 140 N. W. 2d 400.

We have also said: "It is clear that the invasion by a telephone company of the territory of another telephone company, either in service or construction, was intended to be prohibited unless the invading company first applied for and received a certificate of convenience and necessity." Sherdon v. American Communications Co., 178 Neb. 454, 134 N. W. 2d 42.

This court, even in the absence of a statute regarding duplication of facilities, has stated: "Duplicate lines of transportation by competing common carriers are ordinarily incompatible with the public interest. Such a competing line will be authorized only for compelling reasons." In re Application of Effenberger, 150 Neb. 13, 33 N. W. 2d 296. See, also, The Greyhound Corp. v. American Buslines, Inc., 178 Neb. 9, 131 N. W. 2d 664.

Where the specific problem raised in this case has been considered in other states, it seems to have been uniformly held that duplication of toll telephone lines and service, in the manner proposed and partially accomplished by Consolidated, is contrary to law and sound public regulatory policy. See, Clifton Forge-Waynesboro Tel. Co. v. Commonwealth ex rel. Chesapeake & Potomac Tel. Co. of Virginia, 165 Va. 38, 181 S. E. 439; In re Citizens Telephone Co., Inc., 57 P. U. R. 3d 81.

Under the circumstances here, Consolidated did not have the authority to establish toll service without complying with the provisions of section 75-604, R. S. Supp., 1963, and Northwestern was entitled to the order requested in its complaint.

For the reasons stated, the action of the commission was in error, and its order of dismissal is reversed.

REVERSED.