**DUBOIS TELEPHONE EXCHANGE,**
a Wyoming Corporation, Appel-
lant (Appellant below),

v.

The MOUNTAIN STATES TELEPHONE
AND TELEGRAPH COMPANY, a corpora-
tion, and the Public Service Commission
of Wyoming, Appellees (Respondents be-
low).

No. 3581.

Supreme Court of Wyoming.

July 7, 1967.

W. A. Smith of Smith & Vidakovich, Lander, for appellant.

John J. Rooney of Rooney & Horiskey, ·Cheyenne, Luis D. Rovira of Akolt, Shephard & Dick, Denver, Colo., James E. Barrett, Atty. Gen., Lawrence E. Johnson, Don M. Empfield, Special Asst. Attys. Gen., ·Cheyenne, for appellees.

Before HARNSBERGER, C. J., and ·GRAY, McINTYRE, and PARKER, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Dubois Telephone Exchange, an independent telephone company operating in the Dubois area of Fremont County, Wyoming, complained against The Mountain States Telephone and Telegraph Company, to the Public Service Commission of Wyoming, requesting that the Commission require Mountain States to provide additional toll lines for traffic between the two exchanges; and that the Commission direct connections between the exchanges at the boundary line between them, so that toll rates and charges would be adjusted accordingly.

The request of Dubois was denied and appeal was taken by it to the district court, which affirmed the action of the Commission. On appeal from the judgment of the district court, Dubois questions: (1) whether the Commission acted within its powers; and (2) whether its findings of fact were supported by substantial evidence. The entire record must be reviewed to determine these issues.

*Historical Background*

The transcript of proceedings before the Public Service Commission shows that Mountain States started construction of an overland toll line between Lander and Jackson, Wyoming, in 1921. In that year its Lander exchange was extended to Fort Washakie. In 1930 Mountain States constructed a toll line from Fort Washakie to the town of Dubois and provided long-distance services to subscribers at Burris and Crowheart, Wyoming. Thereafter, in 1931, the line was extended from Dubois to Moran, and in 1933 it was extended on to Jackson.

During the period from 1930 through 1959 Mountain States maintained and improved its original toll line and in 1954 made substantial changes and improvements at a cost of approximately $195,000. This cost included $86,500 spent on the Lander-Dubois section and $46,000 on the Dubois-Moran section. In the meantime the Du-

bois exchange had been acquired by its present owners, who incorporated the business in 1957 under the name of Dubois Telephone Exchange, the appellant herein. Also, by 1959 there were four existing toll circuits terminated by Mountain States at the Town of Dubois, which provided toll service to customers of Dubois by way of the Casper, Wyoming, toll office of Mountain States.

In 1964 Mountain States completed a microwave system for toll service between Lander and Jackson, with a capacity of over 100 channels. The present capacity of the overland toll line of Mountain States is 32 channels, and 15 circuits have been made available to appellant. The additional circuits, after the four available in 1959, were added at the following times:

When dial conversion was completed by Dubois Telephone Exchange in 1960, one additional Casper toll circuit was provided by Mountain States along with a limited use toll circuit by way of the Jackson exchange of Mountain States. By 1962, Dubois Exchange had completed a new line, paralleling the overland toll line of Mountain States and terminating near that boundary of Dubois' territory closest to Lander. The line had been approved by the Commission on May 26, 1961. It was constructed principally for service to customers in the Burris-Crowheart area. Dubois claims its demands for six more toll circuits, after construction of its Burris-Crowheart line, were ignored by Mountain States until March 1, 1965, when three additional circuits were made available. Then, during the receipt of testimony before the Commission in the instant case, as counsel for Dubois states it, a representative of Mountain States acknowledged that his company would allow Dubois a maximum of 15 circuits upon the Lander-Jackson overland toll line, 11 of which could be interconnected at any time with the other four being made available if and when additional toll terminal facilities were needed.

Dubois stresses the fact that Mountain States' offer of a maximum of 15 circuits was not made until Mountain States had completed its Jackson-Lander microwave system. Although Dubois complains repeatedly of Mountain States' previous failure and neglect to furnish the Dubois system with "adequate" service lines or facilities to interconnect the Dubois exchange with the exchange of Mountain States at Lander, we do not understand there is any contention that such neglect worked either a loss or acquiring of rights by either party.

Dubois does assert that the failure and neglect of Mountain States to furnish adequate facilities for Dubois was predicated upon the refusal of Mountain States to recognize the boundary line between the exchange territories as the proper point of interconnection. Mountain States makes it eminently clear that it considers the telephone exchange building in the town of Dubois the proper place for interconnection, and this pinpoints the real source of controversy between the two companies.

As a matter of fact, with respect to the six circuits Dubois needed after its Burris-Crowheart line, William A. Lamb, president of the Dubois corporation, admitted in his testimony to the Commission that three additional toll circuits were made available to his company by Mountain States in May 1964 and another three in September 1964, but he refused to allow them to be connected to his company's central office in Dubois because he took the position that the circuits should be terminated at the boundary line of Dubois' certificated area.

Evidence was adduced before the Commission tending to show that a change in the point of connection as requested by Dubois would increase the annual toll revenues of Dubois approximately $10,000 for six circuits, $18,000 for 12 circuits, and $21,000 for 15 circuits. Mountain States claims this would require it to abandon its existing toll line in which it has a substantial investment, rendering useless approximately $60,000 of investment

in facilities constructed by Mountain States.

It is not disputed that the point of connection of the toll line of Mountain States has been at the central office of the Dubois exchange, in the town of Dubois, since 1930. In fact, it is not disputed that this point of interconnection was mutually agreed upon by Mountain States and appellant's predecessor in interest.

### Legality of Commission's Order

The principal contention of appellant on appeal, as we understand it, is that the decision of the Public Service Commission was contrary to law because § 37–31, W.S.1957, "clearly contemplates" that only one public utility will be granted a certificate of public convenience and necessity for the furnishing of telephone service within a certificated area; and that the effect of the Commission's order is to give Mountain States the right to furnish telephone service within appellant's certificated area.

It is spelled out clearly in appellant's brief that Dubois has not requested any change in the point of interconnection of presently existing toll circuits utilized on the Lander-Jackson overland toll line. It is requested that the Commission require Mountain States to provide such additional toll lines or connections as are necessary to adequately service the needs of the Dubois exchange; and that such additional lines be connected at the boundary line of complainant's area, with toll charges being adjusted accordingly.

The original certificate of public convenience and necessity under which Dubois Telephone Exchange claims was dated June 21, 1950. It was amended May 26, 1961 as a result of Dubois having applied to have its territorial limits expanded. Mountain States operated as a telephone utility prior to the enactment of legislation in Wyoming for the certification of such utilities. As a prior existent utility, it had the right to continue its operations. See § 37–31, W.S.1957. However, by order dated August 5, 1960, the Wyoming Public Service Commission issued a certificate of public convenience and necessity to Mountain States, delineating certain of its territory and rights. Such order encompassed the territory and rights here involved.

The rights asserted and claimed by Dubois in the present controversy are predicated on the May 26, 1961 order of the Commission, which amended Dubois' certificate of public convenience and necessity by expanding its territorial limits and authorizing the Burris-Crowheart line. However, we find no language in that order which can be construed as expressly or impliedly granting to Dubois an exclusive right for both local and toll telephone service with respect to the area described in the new order.

On the contrary, the order specified that Mountain States Telephone and Telegraph Company has a toll line running through the area; and that Mountain States should be authorized to construct, operate and maintain toll routes and related facilities through such area. Authorization to "construct" facilities "through" the area tends to refute the idea that future activities of Mountain States would be limited to the bringing of future facilities only to the boundary line of the area. Another paragraph of the order specifically stated:

> "That this Order shall be without prejudice to the right of the Mountain States Telephone and Telegraph Company to construct, operate and maintain toll routes and related plant facilities through the territory involved in this proceeding * * *."

Although counsel for Dubois states § 37–31, W.S.1957, clearly contemplates that only one public utility will be granted a certificate of public convenience and necessity for the furnishing of telephone service within a certificated area, we fail to find language in this statute justifying such a statement; and appellant has not called our attention to any words or lan-

guage in the statute which would indicate such a contemplation. In essence we held to the contrary in Big Horn Rural Electric Company v. Pacific Power & Light Company, Wyo., 397 P.2d 455, 457–458.

Perhaps the power of the Commission to do what it did, when it denied the request of Dubois in the instant matter, is best reflected in the following language contained in § 37–31:

"* * * and provided, further, that if any public utility, in constructing or extending its line, plant or system shall interfere or be about to interfere with the operation of the line, plant or system of any other public utility, already authorized or constructed, the commission on complaint of the public utility claiming to be injuriously affected, may, after hearing, make such order and prescribe such terms and conditions for the location of the lines, plants or systems affected, as to it may seem just and reasonable * * *."

█ Not only does the language just quoted indicate that two similar utilities may have rights in the same territory, but it authorizes the Commission in the event of a conflict between the two utilities to make such order and prescribe such conditions as to it may seem just and reasonable. That of course is what the Commission did when it refused to order what Dubois was requesting. We see no reason to say its action was without authority or contrary to law.

Of interest is the Nebraska case of Northwestern Bell Telephone Company v. Consolidated Telephone Company of Dunning, 180 Neb. 268, 142 N.W.2d 324, 327, which was a case similar to the one we are dealing with: There the Nebraska supreme court held a local telephone company, with a certificate of public convenience and necessity for a limited area, did not have the right to unilaterally change the point at which it exchanges long-distance messages with a toll company. The court stated that where the problem had been considered in other states, it seems to have been uniformly held that duplication of the *toll* telephone lines and service is contrary to law and sound public regulatory policy.

█ If the Commission would have had power, as an administrative agency, to grant the relief requested by Dubois, it follows *a fortiori* that it had the power to deny such relief, in the absence of the denial being arbitrary, capricious or characterized by abuse of discretion which is not here claimed.

██ Having asked for administrative action, which it received, Dubois cannot now be heard to say the administrative agency involved was without power to act— either for or against the relief requested. If Dubois wanted a judicial determination of its rights under § 37–31 and under its May 26, 1961 certificate of public convenience and necessity, it should have sought its relief in the courts and not before an administrative agency.

Section 37–17, W.S.1957, provides that a public utility may complain to the Public Service Commission of anything done or omitted to be done in violation of public utility laws. Section 37–45, W.S.1957, provides for an appeal to the district court of Laramie County and specifies that the court's review is limited to a determination whether or not: (1) The Commission acted without or in excess of its powers; (2) the order was procured by fraud; (3) the order is in conformity with law; (4) the finding of facts in issue was supported by any substantial evidence.[1]

1. Hearing was had before the Public Service Commission on June 8, 1965. The Wyoming Administrative Procedures Act became effective January 1, 1966. Section 14(c) of such act (ch. 108, S.L. of Wyoming 1965) limits the scope of judicial review of administrative action to a determination of whether or not: (1) The agency acted without or in excess of its powers; (2) the decision or other agency action was procured by fraud; (3) the decision or other agency action is in con-

The only questions raised on judicial review in this case are whether the agency acted within its powers and whether the findings of fact in issue are supported by substantial evidence. We have already sufficiently shown that the Commission did not lack power to deny the relief sought by complainant Dubois, and moreover its power to act was recognized and accepted by Dubois in the bringing of its complaint. The only remaining question to be dealt with is the sufficiency of evidence.

## Sufficiency of Evidence

Counsel for appellant has failed to make it clear to us why he says the evidence adduced before the Commission was insufficient. Instead, he has taken one statement after another from the Commission's decision and found fault with it. Then, counsel has taken one statement after another from an answer made by Mountain States to an application for rehearing, which Dubois had made to the Commission, and has found fault with it.

We do not propose to defend or justify every statement made by the Commission in its decision, nor every statement made by Mountain States in its answer to the application for rehearing. We will point out, however, that appellant makes it clear, in discussing the sufficiency of evidence, that Dubois had included only these two things in its complaint to the Commission: *First,* a question was raised concerning a failure on the part of Mountain States to provide sufficient service for Dubois, this being attributable to the refusal of Mountain States to interconnect additional circuits at a boundary line; and *second,* a request was made for the Commission to rule that the point of interconnection for

future demands should be at a boundary line.

With respect to the first of these complaints, we are shown no reason to believe Mountain States lost any rights or that Dubois gained any rights by reason of a failure, if there was one, on the part of Mountain States to furnish services being demanded by Dubois. Moreover, the Commission could have afforded no relief except such as was sought in the second request. Therefore, if the Commission was justified in denying the second request, we need not look for insufficiency of evidence pertaining to the first complaint.

■ As to the second request, for the Commission to order connections at a boundary line, we have already set forth enough of the facts (all of which are reflected in the evidence) to justify the Commission's decision not to grant this request.

■ It is possible appellant is forgetting the fact that it is the complainant in this case. As such, it had the burden of proving that it would not be just or reasonable (see § 37–31, W.S.1957) for the Commission to refuse its request concerning a change in the point of connection for additional circuits. The Commission and the district court thought complainant failed to meet this burden of proof. We think so too; and we find the record of proceedings adequate to show such failure.

The appellant having failed to show, as claimed by it, that the Public Service Commission acted (1) in excess of its powers, or (2) without sufficient evidence, the judgment of the district court must be affirmed.

Affirmed.

formity with law; (4) the findings of facts in issue in a contested case are supported by substantial evidence; and (5) the decision or other agency action is

arbitrary, capricious or characterized by abuse of discretion.

The rule which implements § 14(c) is Rule 72.1(i), W.R.C.P.