In re Application of Norris Schoen, Fairbury, Nebraska.
Norris Schoen, appellee, v. American Communication Company, Inc., appellant.
199 N. W. 2d 716

Filed August 4, 1972. No. 38382.

Nelson, Harding, Marchetti, Leonard & Tate and David R. Parker, for appellant.

Norris Schoen, pro se.

O'Hanlon & Martin, for amici curiae.

Heard before White, C. J., Spencer, Boslaugh, Smith, McCown, Newton, and Clinton JJ.

Smith, J.

Norris Schoen resided in the telephone service area of the Reynolds exchange of American Communication Company, Inc. He applied to the Nebraska State Railway Commission for service from the Fairbury exchange of Lincoln Telephone and Telegraph Company. A common boundary separated the two service areas.

The commission, dividing 3-2, granted the application subject to reimbursement of American for loss of investment and to payment of construction costs of Lincoln. American appeals. It attacks (1) commission findings on issues relating to duplicate facilities, community of interest, and public interest, and (2) authority of the commission to extend the certificate of public

convenience and necessity without an application by Lincoln.

The area in question appears on the following map:

This rural area is sparsely populated, and growth is not anticipated in the foreseeable future. According to the 1970 census, the population of Fairbury, a county seat, was 5,265. The Reynolds exchange comprises 82 stations, one-half of which are rural.

Toll lines of Lincoln extend along the north-south road adjoining Schoen's residence. Providing the requested service would entail construction of separate circuitry on the poles northward 1½ miles to the nearest subscriber of Lincoln. The new circuitry would extend Lincoln's service area to a point only 2 miles away from the base rate area of American. Integrated companies of which American is a member operate 100 exchanges. Their service usually extends more than 2 miles from the community site of the central office equipment.

The investment of American in Nebraska averages between $350 and $400 a station. The properties are mortgaged 'to the United States. The president of American testified that loss of one potential station would not affect the company adversely. Thought of a trend in that direction, however, perturbed him.

Schoen has refused telephone service from American and its predecessors since he moved to his present home in 1957. At the hearing he lodged only one complaint: The exchange rate on calls from the Reynolds service area to Fairbury was $.20. Business acquaintances, children's schools, family friends, and church are all located at Fairbury. He and his family have no interest in the Reynolds service area outside his farm of 160 acres. The great majority of residents in the area possess a community of interest in Reynolds.

Schoen and American alone appeared at the hearing, although the commission had notified Lincoln. Schoen has not appeared on appeal, and no one has filed a brief in support of his position.

Powers and duties of the commission include regulation of rates, service, and general control of common carriers as the Legislature may provide. In the absence of specific legislation, however, the commission is to exercise the powers and perform the duties. Art. IV, § 20, Constitution of Nebraska.

Entry or extension of a public utility in intrastate telephone business in Nebraska under legislation en-

acted in 1963 must be preceded by (1) an application from the utility to the commission, (2) notification and hearing, (3) findings relating to lack of "reasonably adequate telephone service," (4) agreement among subscribers and interested telephone companies, (5) absence of duplication of facilities, and (6) existence of public interest or interest of the party who desires service. See, § 75-604, R. R. S. 1943; Sherdon v. American Communication Co., 178 Neb. 454, 134 N. W. 2d 42 (1965).

Since 1969 any person may apply to the commission for telephone service furnished in the exchange service area adjacent to his residence or place of operation. Grant of the application is subject to proof of facts and to conditions as follows: (1) Applicant is not receiving, and within a reasonable time will not receive, reasonably adequate exchange service from the company that is serving his residence. (2) The grant is economically sound and will not create a duplication of facilities or impair the capability of the company to serve its remaining subscribers. (3) The community of interest in the general territory is such that the commission should grant the application. (4) Applicant will pay construction and other costs and fair rates. (5) Applicant will reimburse the company for any necessary loss of investment in existing property as determined by the commission. See §§ 75-613 and 75-614, R. R. S. 1943.

Schoen did not allege manipulation of the exchange rate of $.20. See, generally, Fulda, "Telephone Regulation in Texas; Should Regulation by Cities Be Replaced by a State Commission?" 45 Tex. L. Rev. 611 at 623 (1967); Trebing, "Common Carrier Regulation - The Silent Crises," 34 Law & Contemp. Prob. 299 at 301, n. 1 (1969). Indeed he admitted the reasonableness of the rate. From his viewpoint and to him alone the charge would be exorbitant.

It is possible to construe the statute of 1969 to provide a new remedy but otherwise to maintain the status

quo. We think the statute introduces a new concept. An applicant may prevail without proving inadequacy of service or unfairness of rates in the tradition of public utility law. The concept that such relief furthers the public interest is new but not startling. See Trebing, op. cit. at 302 and 310. Such phrases as "reasonably adequate service," "duplication of facilities," "public interest," and "community of interest in the general territory" acquire a new meaning limited to the context of §§ 75-613 and 75-614, R. R. S. 1943. Definition must evolve, case by case.

The small independent companies worry that affirmance here will signal a trend toward erosion of their service areas. The argument is wide of the mark. We decline to conjecture future legislation or action of the commission as well as the impact of the technological revolution in communications. See, generally, Trebing, op. cit. at 307-310; Irwin, "The Communication Industry and the Policy of Competition," 14 Buffalo L. Rev. 256 (1964-65); Havighurst, "Foreword," 34 Law & Contemp. Prob. 203 (1969); Barrow and Manelli, "Communications Technology - A Forecast of Change," 34 Law & Contemp. Prob. 205 (1969); Werner, "A Lawyer Looks at Our Communications Policy," 11 A. B. A. Jurimetrics J. 81 (1970).

The argument that Lincoln failed to apply for a certificate overlooks the statutory provisions and several circumstances. Lincoln is not directly or indirectly an invader. After notification of hearing it opted not to appear. Lincoln is capable of protecting its own interests without the assistance of a competitor.

The order is affirmed.

AFFIRMED.