IN RE APPLICATION OF RADIO-FONE, INC., OMAHA, NEBRASKA.
RADIO-FONE, INC., OMAHA, NEBRASKA, APPELLANT, V. A.T.S. MOBILE TELEPHONE, INC., ET AL., APPELLEES, CURTIN-CALL COMMUNICATIONS, INTERVENER-APPELLEE.
193 N. W. 2d 442

Filed January 7, 1972. No. 37947.

Nelson, Harding, Marchetti, Leonard & Tate and Earl H. Scudder, Jr., for appellant.

Erickson, Sederstrom, Johnson & Birmingham, Robert J. Kutak, Lewis J. Kunkel, Jr., and William B. Woodruff, for appellees.

David J. Cullan, for intervener-appellee.

Bert L. Overcash of Woods, Aitken, Smith, Greer, Overcash & Spangler, for amicus curiae.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

WHITE, C. J.

Radio-Fone, Inc., hereinafter referred to as Radio-Fone, applied to the Nebraska State Railway Commission, hereinafter referred to as the Commission, for the issuance of a certificate of public convenience and necessity authorizing it to operate as a domestic public land radio common carrier with its proposed base in Omaha, Nebraska, and its service area extending for a 35-mile radius. Protestants to the application were A.T.S. Mobile Telephone, Inc., Business Executive Services, Inc., and Nebraska Mobile Telephone Company, and intervener Curtin-Call Communications. A.T.S. Mobile Telephone, Inc., hereinafter referred to as A.T.S., objected on the ground that it already holds a certificate of public convenience and necessity under which it renders a similar telephone service in the 35-mile radial area Radio-Fone proposed to serve. The other three protestants objected on the ground that they *also* proposed to offer radio telephone service to the area being serviced by A.T.S. The Commission was thus faced with four proposals to furnish competitive service to the licensed carrier. Only one, Radio-Fone, appeals.

The Commission conducted hearings in November 1969 and January 1970 and, thereupon, entered an order denying the application. Radio-Fone appeals to this court claiming that the Commission acted arbitrarily, unreasonably, and outside lawful authority in denying the application.

Although the heart of a radio common carrier's task is to provide telephonic communication via radio wave, the essential service may take many peculiar forms. Basically, Radio-Fone proposed to offer two types of radio telephone services. The first, an automatic dial one-way paging system, would allow a landline telephone caller to dial directly into a mobile paging unit

and state his message without operator assistance. The mobile paging unit would receive the message but would have no transmission capability. The second proposed service was an automatic dial, duplexed (simultaneous talk and listen) two-way mobile communications system that would have no operator intervention when calling from a mobile unit to a landline system, but with operator intervention from a landline telephone to a mobile unit.

At the time of the hearings, A.T.S. was offering a duplexed two-way mobile service with operator intervention on two channels and on a third channel, a tone-and-voice one-way paging service with the operator relaying the message after activating a tone-emitting mechanism to alert the mobile unit. From the evidence presented, automation, the by-passing of operator intervention, appears to have been the primary difference between the services proposed by Radio-Fone and those being rendered by A.T.S.

Besides an apparent attempt to characterize the services offered by A.T.S. as antiquated, Radio-Fone introduced evidence at the hearings to show that A.T.S. was not performing adequately the services it did offer. Some witnesses for Radio-Fone testified that as or having been subscribers for either the mobile telephone or paging services provided by A.T.S., they were of the opinion the service provided had been less than exemplary. Generally their complaints related to the overcrowding of the radio channels and the improper relaying of messages by the A.T.S. operators. In opposition thereto A.T.S. subscribers testified that the service was adequate and had improved recently. A.T.S. had moved to new facilities and had received additional FCC licensed radio channels for communication to mobile units.

A.T.S. offered evidence at the hearings to show that there were reasons for the subscribers' temporary dissatisfaction with services; that the problems had been resolved; and that A.T.S. was moving ahead to provide

better service in the future. The record shows that in September 1968, the joint owners of A.T.S. became involved in litigation concerning the exercise of an option to purchase the corporation by one of the joint owners. Amidst this turmoil in management, in January and April 1969, A.T.S. filed applications with the FCC for additional radio channels, and to thus improve and furnish new service, but the FCC held the applications pending the termination of the litigation between the joint owners.

It was at this point in the history of A.T.S. that Radio-Fone submitted its application to the Commission for a certificate of public convenience and necessity, asserting in answer to interrogatories submitted in August of 1969 that "A.T.S. cannot provide service because of legal problems." In September of 1969, the litigation over the control of A.T.S. terminated, the corporation moved into new facilities, and a letter was sent to the Commission describing current developments within the corporation and promising further development. On November 14, 1969, A.T.S. received its second *two-way mobile channel license* from the FCC and on November 13, 1969, was also granted a construction permit for a *one-way paging channel* which was prior to the Commission's hearings on Radio-Fone's application.

In Furstenberg v. Omaha & C. B. St. Ry. Co., 132 Neb. 562, 272 N. W. 756 (1937), we said that when an appeal is taken from the Nebraska State Railway Commission's denial of a certificate of public convenience and necessity, the *only* questions to be decided by this court are whether the Commission acted within the scope of its authority and if the order complained of was reasonable and not arbitrarily made. Shanks v. Watson Bros. Van Lines, 173 Neb. 829, 115 N. W. 2d 441; Canada v. Peake, Inc., 184 Neb. 52, 165 N. W. 2d 587. After a review of the record, we are not convinced that the Commission's action was arbitrary and unreasonable in relation to the facts presented at the hearings. Although there is evi-

dence that A.T.S. may have provided less than exemplary service, we cannot say upon review of the facts that the Commission's determination that the service provided was not less than "reasonably adequate," was unreasonable or arbitrary.

The real issue in this case is whether the Commission exceeded its powers under the law in its denial of Radio-Fone's application. There is no question that under Article IV, section 20, of the Constitution of the State of Nebraska, the Nebraska State Railway Commission has plenary power to regulate common carriers. Furstenberg v. Omaha & C. B. St. Ry. Co., *supra.* In the absence of specific legislation, the powers and duties of the Commission, as enumerated in the Constitution, are absolute and unqualified. State ex rel. State Railway Commission v. Ramsey, 151 Neb. 333, 37 N. W. 2d 502. The constitutionally created powers and duties of the Commission include the regulation of rates, service, and control of common carriers. In re Lincoln Traction Co., 103 Neb. 229, 171 N. W. 192; Omaha & C. B. St. Ry. Co. v. Nebraska State Railway Commission, 103 Neb. 695, 173 N. W. 690.

Thus, the Commission shoulders a heavy burden in regulating common carriers in the public interest. This court has long recognized that it is the primary duty of the Commission, and not this court, to act as ongoing supervisor of the conduct of intrastate common carriers. In this regard, we have long noted the limited nature of the review that this court can give on appeal of an order of the Commission. In re Lincoln Traction Co., *supra;* Publix Cars, Inc. v. Yellow Cab & Baggage Co., 130 Neb. 401, 265 N. W. 234; Furstenberg v. Omaha & C. B. St. Ry. Co., *supra;* Moritz v. Nebraska State Railway Commission, 147 Neb. 400, 23 N. W. 2d 545.

We have recognized that the Commission has continuing jurisdiction over its orders in regard to the regulation of common carriers, with the doctrines of collateral estoppel and res judicata having no application

whatever. Simmerman v. National Trailer Convoy, Inc., 179 Neb. 400, 138 N. W. 2d 481; Andrews Van Lines, Inc. v. Nielsen & Petersen, Inc., 180 Neb. 764, 145 N. W. 2d 584; Neylon v. Petersen & Petersen, Inc., 183 Neb. 813, 164 N. W. 2d 452; Canada v. Peake, Inc., *supra*.

Radio-Fone argues that a proper interpretation of section 75-604, R. R. S. 1943, requires a reversal because an improper burden of proof was required of it. We reject this contention. The statute provides: "No person, firm, partnership, corporation, cooperative, or association shall offer telephone service or shall construct a new telephone line in or extend an existing telephone line into the territory of another telephone company without first making an application for and receiving from the commission a certificate of convenience and necessity, after due notice and hearing under the rules and regulations of the commission. Before granting a certificate of convenience and necessity, the commission must find that *(1) the territory in which the applicant proposes to offer telephone service is not receiving reasonably adequate telephone service, (2) that the portion of the territory of another telephone company in which or into which the applicant proposes to construct new lines or extend its existing lines is not and will not within a reasonable time receive reasonably adequate telephone service from the telephone company already serving the territory,* or (3) the application is agreeable to the subscriber or subscribers and to both telephone companies involved in the matter, will not create a duplication of facilities, and is in the interest of the public and the party or parties requiring telephone service." (Emphasis supplied.)

Radio-Fone itself invokes the application of this statute. It therefore cannot properly deny that the mobile service and specialized facilities it uses are not "telephone service" and not subject to Commission regulation. Moreover, the courts have generally held that mobile telephone service in its different aspects is a form

of telephone service and subject to all statutes and regulations pertaining to telephone service. State ex rel. Utilities Commission v. Two Way Radio Service, Inc., 272 N. C. 591, 158 S. E. 2d 855 (1968); Commercial Communications, Inc. v. Public Utilities Commission, 50 Cal. 2d 512, 327 P. 2d 513, app. dism. and cert. den., 359 U. S. 119, 341, 79 S. Ct. 722, 896, 3 L. Ed. 2d 674, 927.

In State ex rel. Utilities Commission v. Two Way Radio Service, Inc., *supra,* the court said: "A certificate of public convenience and necessity which authorizes its holder to render 'telephone service,' does not limit the holder to the practice of the art of telephony as it was known and practiced on the date the certificate was issued, nor to the use therein of devices, equipment and methods then in use. Obviously, it is the intent of such a certificate to authorize the holder to improve its service by adopting and using new and improved devices and methods for telephonic communication. * * * The Commission and the courts may take judicial notice of the well known fact that telephone companies today habitually transmit conversations by electrical impulses traveling through part of the intervening space without proceeding upon wires. There transmissions are a part of 'telephone service' as that term is used and understood today. See Commercial Communications v. Public Utilities Commission, 50 Cal. 2d 512, 327 P. 2d 513, app. dism. and cert. den., 359 U. S. 119, 341, 79 S. Ct. 722, 896, 3 L. Ed. 2d 674, 927."

Closely applicable to the present case is the following from Commercial Communications, Inc. v. Public Utilities Commission, *supra:* "The word 'telephone' is not defined in the code. In its narrow sense 'telephone' refers to the instrument by which telephony is achieved. It is defined in Webster's New International Dictionary, 2d edition as 'An instrument for reproducing sounds, especially articulate speech, at a distance.' In defining 'telephony' the Encyclopaedia Britannica (1954 ed.) states 'In a broad sense the term telephone or telephony

includes the entire art of speech transmission with the many accessories and operating methods which research, development and invention have supplied to facilitate and extend conversation at a distance by electrical means.' * * * In common understanding the communication effected by private mobile systems would appear to be a telephone communication."

It is clear, therefore, either under the general constitutional power of the Commission (Furstenberg v. Omaha & C. B. St. Ry. Co., *supra,* and subsequent cases) or the specific statute sought to be interpreted, section 75-604, R. R. S. 1943, that a licensed operating telephone company (mobile service included) has a monopoly, subject to regulations by the Commission of all forms of telephone service within its defined area.

Directly applicable here is our holding in the recent case of Northwestern Bell Tel. Co. v. Consolidated Tel. Co., 180 Neb. 268, 142 N. W. 2d 324, where we said: "This court has said that the object and purpose of commission control of common carriers is to secure adequate sustained service for the public at the lowest reasonable cost, and to protect and conserve investments made for that purpose. Chambers Rural Tel. Co., Inc. v. K. & M. Tel. Co., Inc., 179 Neb. 735, 140 N. W. 2d 400.

"We have also said: 'It is clear that the invasion by a telephone company of the territory of another telephone company, either in service or construction, was intended to be prohibited unless the invading company first applied for and received a certificate of convenience and necessity.' Sherdon v. American Communications Co., 178 Neb. 454, 134 N. W. 2d 42.

"This court, *even in the absence of a statute* regarding duplication of facilities, has stated: '*Duplicate lines of transportation by competing common carriers are ordinarily incompatible with the public interest.* Such a competing line will be authorized *only for compelling reasons.*' In re Application of Effenberger, 150 Neb. 13, 33 N. W. 2d 296. See, also, The Greyhound Corp. v.

American Buslines, Inc., 178 Neb. 9, 131 N. W. 2d 664."
(Emphasis supplied.)

The force of the above language is an extension of the basic proposition that in Nebraska the concept of public utility regulations now is and always has been, one of regulated monopoly. Furstenberg v. Omaha & C. B. St. Ry. Co., *supra;* In re Application of Effenberger, 150 Neb. 13, 33 N. W. 2d 296; The Greyhound Corp. v. American Buslines, Inc., 178 Neb. 9, 131 N. W. 2d 664.

Confining ourselves to the statute, section 75-604, R. R. S. 1943, the act prohibits, by its terms, anyone from offering telephone service in the "territory of another telephone company" without a certificate by the Commission. Such a certificate can be granted only (1) if the area is "not receiving reasonably adequate telephone service" and (2) "will not within a reasonable time receive reasonably adequate telephone service." Both of these requirements must be met. The suggestion of Radio-Fone to the contrary is patently erroneous. The purpose is to permit no duplication unless the existing company is not and will not in a reasonable time furnish adequate service. The act puts into effect the existing carrier rule applied by this court in numerous public utility cases—that a new carrier cannot be certificated "until the existing carrier refuses or has failed to provide adequate service on notice, hearing, and order of the commission." The Greyhound Corp. v. American Buslines, Inc., *supra.*

The Commission's determination that Radio-Fone had not met its burden of proof under the statute and the applicable case law was not arbitrary, capricious, or unreasonable, and was within the authority permitted by the applicable statute and the constitutional powers of the Commission. Its judgment is therefore affirmed.

AFFIRMED.