A. Franklin Mahoney, J.
This article 78 proceeding presents the question of whether petitioners’ business of. providing paging service to subscribers by: (a) receiving a telephone message and transmitting same to a subscriber by radio message or tone signal, or (b) receiving a telephone message in its office and by having its receiving equipment connected to a telephone line transmit said message to a subscriber by radio, or (c) by use of telephone lines normally connected to certain equipment a caller is able to speak via radio to a subscriber who either has a-personal radio receiver on his person or installed in his car, is subject to Public Service Commission (hereinafter PSC) regulation.
An affirmative answer to the question posed above shall require inquiry into the following attendant issues:
(1) Did the PSC validly establish and promulgate rules and regulations for the conduct of petitioner’s (Radio Common Carriers, hereinafter RCCs) business without holding a public hearing?
(2) Are the rules and regulations promulgated by the PSC lawful in that, as applied, they differ from those imposed upon land-line telephone companies (New York Telephone Company and others) ?
(3) Did the PSC violate due process with respect to the petitioning carriers in that it exempted RCCs which were in operation or had applied to the FCC for allocation of radio frequencies prior to October 1, 1973?
(4) Did the PSC act arbitrarily in requiring newly regulated RCCs to conform its system of accounts to that required of land-line telephone companies heretofore authorized to conduct a like business?
A RCC[1] is a radio station licensed by the FCC (Federal Communications Commission) to operate oh an assigned channel ás a public communications service for hire. A RCC provides *602 its subscribers with a small receiving device which can be carried on one’s person or installed in a vehicle. The service provided can be either “ connected ” or “interconnected” with a conventional land-line telephone company already controlled, regulated and licensed by the PSC and authorized to engage in a like or similar business or service.[2] If the service is merely “connected ”, a subscriber may communicate with RCCs’ control point or with other coworkers or coprincipals who are carrying like paging receivers. If the service is ‘ ‘ interconnected ”, the subscriber may communicate directly with, and be reached by, all persons on the general telephone network.
In the latter case the PSC, as early as 1962, determined that where radio communication service is interconnected with a land-line telephone company, certification as a telephone corportion should be required (Application of Capital Mobile Radio Service, Inc., Case No. 21810, 42 P.U.R. 3d 433). During the past decade, however, the respondent PSC has refrained from making a like requirement with respect to noninterconnected RCCs.
In August of 1973 the respondent commission, after re-examination of the radio-telephone industry had indicated that public use of radio-telephone communications had dramatically increased in the decade of the sixties,[3] decided to extend plenary jurisdiction over and regulation of noninterconnected RCCs. It is that decision pf the PSC that is under review herein.
Refining the issue further is to ask whether the activities of the RCCs are such that it can be said they are engaged in the “business of affording telephonic communication for profit” (Public Service Law, § 2, subd. 17; and for basis of definition and of regulation, see § 2, subd. 18; §§ 5, 90, 94) both with respect to those activities of the petitioning RCCs that have to do with ‘ ‘ interconnected reliance on the telephone lines of land-based telephone companies and with noninterconnected transmissions ? In my view, there can be no doubt that interconnected transmissions are subject to the jurisdiction and regulation of the PSC. Such has been the case for the past decade and without objection of the RCCs regulated. Next, I find nothing in the PSC opinion, nor in the law against which it must be weighed, *603 to persuade me to the view that noninterconnected radio transmission of messages is so distinguishable from telephonic transmission of the same, "that the former must be excluded from regulation. The PSC is charged with the responsibility of administering the Public Service Law, and its determination of the applicability of that law to those areas of communication assigned to it for regulation will not be set aside by the courts if there is a rational basis for the conclusions reached (Rochester Tel. Corp. v. United States, 307 U. S. 125, 146; Matter of Mounting & Finishing Co. v. McGoldrick, 294 N. Y. 104, 108; Matter of Gamewell Co. v. Public Serv. Comm., 8 A D 2d 232, 235).
Telephony is the art of communication and is so invested with public concern that the Legislature has seen fit to regulate it as a public utility. Telephonic communication is by wire. Radio, in its beginnings, was called a “ wireless ” and its initial employment was not to communicate in the sense of delivering messages but, rather, to inform and entertain. Yet, even in that relatively unsophisticated posture, the Federal Government thought it sufficiently in the public interest to regulate the radio industry to the extent that it assigned radio frequencies. When radio advanced in refinement to the point where it was used to make personal, rather than general, contact so as to transmit material of interest only to the receiver, it invaded the same area of public concern as that, occupied by telephonic communicators. The only difference is that one is wireless and the other is not. Next, if noninterconnected radio were not regulated by the PSC the proliferation of RCCs could have an adverse impact on the public interest. Circuits could become overcrowded, duplication of service could develop and trunking of channels so as to provide more efficient service would be impossible. In fact, RCCs, including petitioners, might be handicapped in obtaining radio frequencies from the FCC, since that body has repeatedly deferred such assignments of frequencies pending consideration by State regulatory commissions óf application for certificates of public convenience and necessity. The FCC could conceivably deny radio frequency assignment absent any showing that a local public interest, would be served.
While petitioners fully support regulation under appropriate statutory authority,[4] they adamantly contend that no such authority exists in the present law and none can or should be implied (Danna v. Con Edison Co., 71 Misc 2d 1029; City of *604 New York v. Interborough R. T. Co., 232 App. Div. 233, affrd. 257 N. Y. 20; City of New York v. Maltbie, 274 N. Y. 90). This legal principle is correct provided one reads into its application nuances that permit judicial construction not totally dependent upon statutory specificity. It is too much to require the Public Service Law to delineate specifically each and every act that is subject to regulation. For example, it has been held that the BSC may regulate requisite underground installation of electric and telephone distribution facilities (Matter of Sleepy Hollow Lake v. Public Serv. Comm., 43 A D 2d 439). The issue, as I see it, is not whether the Public Service Law specifically grants to the PSC jurisdiction over ECCs but, rather, whether the use of radio transmitters, receivers and pagers, in conjunction with telephone lines, falls within the statutory grant of .sections 2 and 5 of the Public Service Law so that it can be said that such facilities fall within the definitions of “ telephone corporation ” and “telephone line”. Again, in my view, the criteria of whether the thing sought to be regulated falls within the ambit of a regulated business or activity is whether its employment is incidental or primary to the regulated utility. For example, the courts have held that the use of telephone facilities was only incidental to the nonutility business of providing burglar alarms and protection of premises. In that instance, the primary business was not to communicate. It was to protect. In the instant case, the primary, indeed, the sole business of ECCs as well as land-line telephone companies is to provide the facilities to facilitate the communication of intelligence. Its business is not that of equipment rental but of furnishing, for hire, the service of communication. Petitioners’ equipment, though solely under their control, is virtually useless unless used in conjunction with land-based telephone lines. In order for the petitioners to disassociate the employment of their devices from those belonging to land-line telephone companies, it would be necessary for them to conduct their business in a manner that would guarantee its extinction. For example, to avoid the employment of a telephone line a subscriber would have to journey to the offices of the ECC, however distant, and orally deliver his message for transmission. The recipient of the message, if he were to act upon the same, would likewise be required to avoid the use of a telephone line. Concededly, this example is outrageously hyperbolized, but its extremeness underscores the requisite need of telephone lines in carrying out the business of the petitioners.
*605 I conclude, therefore, that both interconnected and noninterconnected employment of radio transmitters, receivers and pagers is so fundamentally connected with telephonic communication that the nexus is not severable so as to deny to the PSC jurisdiction, based upon statutory grant, and the attendant right to regulate.
Next, the petitioners contend that the promulgation of the proposed regulations, without hearing, constitutes an abuse of discretion that adversely affects their property rights. It appears that on August 3,1973, when the commission announced its decision asserting jurisdiction, it concurrently issued proposed regulations and invited comments from interested parties. The PSC justified its denial of petitioners’ request for a public hearing on the ground that it had sufficient input from all interested parties, including petitioners, and, further, that its long experience with radio-telephone utilities adequately equipped it to promulgate rules and regulations.
Petitioners, however, citing Matter of New York Edison Co. v. Maltbie (271 N. Y. 103, 111); Matter of Hecht v. Monaghan (307 N. Y. 461, 468) contend that the Court of Appeals has mandated that a public hearing be held before rules and regulations interfering with property rights be promulgated. In my view, petitioners ’ reliance on the afore-cited cases is misplaced. -While it is true that the exercise of a statutory power by an administrative agency which adversely affects property rights requires a public hearing, even though not statutorily mandated, such is the case, so far as the PSC is concerned, only with respect to regulated utilities. Where, as herein, the PSC’s assertion of jurisdiction is a matter of law, no public hearing is required and the rules and regulations fashioned by the commission to expedite its assertion of jurisdiction were general and administrative in nature and do not interfere with the property rights of those sought to be regulated. If, hereafter, the PSC should promulgate operative rules that affect property rights of the petitioners, then the principle enunciated in New York Edison Co. v. Maltbie (supra) and Matter of Hecht v. Monaghan, (supra) would apply. In the case at bar, however, administrative rules promulgated concurrently with the assertion of jurisdiction'as a matter of law, did not require a public hearing.
The same rationale that immunizes the PSC from arbitrariness in not conducting a public hearing upon request, supports the conclusion of the PSC that the administrative rules and regulations, as applied, need, not be imposed upon land-line telephone companies already engaged in radio-telephonic com *606 munications. , Any subsequent adoption of operative rules, as distinguished from administrative regulations, that purportedly prefers land-line telephone companies over RCCs would have to be justified at a public hearing.
The two final contentions of the petitioners that due process was violated by the “ grandfathering ” provisions which permitted the issuance of certificates of public convenience and necessity to any radio-telephone companies which were in operation or had applied to the FCC for the allocation of radio frequencies prior to October 1,1973 and by the establishment by the PSC of a Uniform System of Accounts for radio-telephone utilities are without merit.
The statutory employment of grandfathering clauses is a well-recognized principle used to protect vested interests and property rights. The PSC concluded that it would be unfair to require those few RCCs which had already made application to the FCC for radio assignment frequencies to discontinue that expensive and time-consuming procedure, and obtain State approval before reapplying to the FCC. The commission felt that those RCCs with inchoate applications on file with the FCC had acquired a property right and,- further, to require discontinuance of such applications would be an unfair hardship without countervailing benefit. Justification for the ‘[1] grandfathering ’ ’ provisions can be gleaned from the fact that they will not, as petitioners fear, expedite an unreasonable large entry into the field of radio-communications by RCCs who are not required to obtain State approval. First, there are only a small number of companies with applications on file with the FCC and, lastly, the regulatory provisions of the FCC would deny radio-frequencies assignment to any RCC found to be wanting by reason of inability to show a local need.
Finally, -the establishment of a Uniform System of Accounts for radio-telephone utilities is not so unreasonable as to require annulment of the PSC determination. The commission is specifically empowered by subdivision 2 of section 95 of the Public Service Law to establish a system of accounts for companies subject to its jurisdiction and prescribe the manner in which such accounts should be kept. In the instant case, the Uniform System of Accounts promulgated for RCCs is tailored to their operations and deliberately lends itself to a manner of accounting that would reflect a degree of uniformity with respect to revenues, operating costs, depreciation expenses and investment in plant and equipment that would better equip the PSC to discharge its duty of regulation and supervision, *607 particularly in the area of rate regulation. The uniformity of accounts among all regulated RCCs would lessen the possibility of discrimination or favoritism. Finally, the requirement of uniform accounting is regulation of an aspect of the utilities business and not of the business itself.
For all of the reasons above, the court concludes that the determination of the Public Service Commission, herein reviewed, should be confirmed.

. Also known as a Radio-Telephone-Utility.

. In 1946 the New York Telephone Company filed a tariff with the PSC providing for the furnishing of radio-mobile service interconnected with its general network. New York Telephone Company was permitted by PSC to provide such service and still dpes, as do other land-line telephone companies.

. In August of 1973 there were 43 RCCs, 21 of which were authorized to interconnect with land-line telephone companies and four more were awaiting certification.

. Presently, there is pending before the New York State Assembly a bill to give the PSC jurisdiction over RCCs.