(No. 49126.—

RADIO RELAY CORP. *et al.*, Appellants, v. THE ILLINOIS COMMERCE COMMISSION *et al.*, Appellees.

*Opinion filed November 30, 1977.*

Peter V. Fazio, Jr., and Christopher B. Nelson, of Schiff, Hardin & Waite, of Chicago, and Dennis K. Muncy, of Meyer, Capel, Hirschfeld, Muncy, Jahn and Aldeen, of Champaign, for appellants.

William J. Scott, Attorney General, of Springfield (Hercules F. Bolos, Special Assistant Attorney General, and Rodney C. Howard and Mary C. Ubatuba, Assistant Attorneys General, of Chicago, of counsel), for appellee Illinois Commerce Commission.

Thomas R. Phillips, Peter R. Scullen, and Donald H.

Sharp, of Chicago, for appellee Illinois Bell Telephone Company.

Douglas G. Brown, of Springfield, for appellee Illinois Telephone Association.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

The circuit court of Cook County affirmed an order of the Illinois Commerce Commission (hereinafter referred to as the Commission) denying the relief requested by plaintiffs, Radio Relay Corp. (Radio Relay) and Rogers Radio Communication Services, Inc. (Rogers), in a complaint filed with the Commission concerning a tariff filing made by Illinois Bell Telephone Co. with the Commission. Chicago Communication Service, Inc., which had joined the complaint before the Commission, did not appeal. A divided First District Appellate Court affirmed (43 Ill. App. 3d 719), and we granted plaintiffs' petition for leave to appeal.

The facts in this case are not disputed and are well stated in the appellate court opinion (43 Ill. App. 3d 719, 720-23). We summarize them only to the extent necessary to our opinion. The three complainants before the Commission are competitors operating similar pocket-paging services in the Chicago metropolitan area. The purpose of the service is to alert a subscriber that a message has been left for him at a predesignated location or that he is to dial a predesignated telephone number. The subscriber is alerted by the transmission of radio signals designed to activate a portable radio receiver carried by him. These pocket-sized receivers emit an audible "beep" when activated. The radio signals may be triggered either directly through equipment interconnected with the land-line telephone system or manually by company operators. Plaintiffs now operate pursuant to limited certificates of

public convenience and necessity issued by the Commission, although these certificates were not obtained until their respective paging services began using equipment interconnected with the landline telephone system. Four other companies provide some form of signaling service in the same area, but those companies are not interconnected with a landline telephone company, nor are they certificated by the Commission.

Bell has been operating a telephone public utility business through 39 exchanges which include areas in which plaintiffs offer their paging services. Prior to the Commission hearings, 12 of these exchanges had obtained certificates from the Commission. These certificates read as follows:

> "IT IS HEREBY CERTIFIED that public convenience and necessity require the construction, operation and maintenance of telephone facilities and the transaction of a telephone public utility business in connection therewith by Illinois Bell Telephone Company [in the areas of the particular exchange as shown on attached maps]."

The remaining 27 exchanges were operating pursuant to the "grandfather rights" provision of the Public Utilities Act (Ill. Rev. Stat. 1971, ch. 111 2/3, par. 56). Bell and its predecessor have provided telephone service in and around the Chicago metropolitan area since 1881. Between 1946 and 1970, Bell offered two types of signaling services: (1) radio signaling to vehicles, and (2) loudspeaker paging systems used to call people to the phone. Bell proposed to offer its own Bellboy signaling service, basically a one-way-radio pocket-paging service, in the 39 Chicago-area exchanges. It made a tariff filing with the Commission on October 16, 1972, which was to become effective November 15, 1972. This proposed service was essentially similar to the services provided by plaintiffs. It would not, however, utilize the equipment used in the old vehicle-signaling service, and Bell would construct or purchase new

equipment and facilities. This equipment includes 20 radio transmitters at various locations, 1 computer terminal, and pocket receivers for the subscribers.

The plaintiffs filed their complaint with the Commission on November 15, 1972, objecting to and causing the suspension of the tariff. Their basic contention was that section 55 of the Public Utilities Act (Ill. Rev. Stat. 1971, ch. 111 2/3, par. 56) required Bell to obtain a certificate from the Commission prior to its construction of any new plant, equipment, property or facility to be used in providing Bellboy service. The Commission ruled that the equipment and facilities required to provide Bellboy service are an extension of or addition to the existing plant, equipment, property or facility used by Bell in transacting its telephone public utility business authorized either by certificate or by its status as a "grandfather" public utility, and, accordingly, no new certificate was necessary.

The basic premise underlying plaintiffs' position is that a pocket-paging service is not within the concept of a telephone public utility service. We disagree and hold that Bell was authorized to proceed as it did.

Section 55 reads, in part, as follows:

> "No public utility shall begin the construction of any new plant, equipment, property or facility which is not in substitution of any existing plant, equipment, property or facility or in extension thereof or in addition thereto, unless and until it shall have obtained from the Commission a certificate that public convenience and necessity require such construction.
>
> No public utility not owning any city or village franchise nor engaged in performing any public service or in furnishing any product or commodity within this State and not possessing a certificate of public convenience and necessity from the State Public Utilities Commission or the Public Utilities Commission, at the time this Act goes into effect shall transact any business in this State until it shall have obtained a certificate from the Commission

that public convenience and necessity require the transaction of such business. ***" Ill. Rev. Stat. 1971, ch. 111 2/3, par. 56.

It is apparent that this statute requires a public utility to obtain a certificate of public convenience and necessity prior to transacting business and prior to beginning certain new construction. Although plaintiffs' arguments are directed primarily at the new construction, both requirements must be considered. Bell is admittedly authorized to transact a public utility telephone business in the area involved in this case, and it is clear to us that providing a one-way-radio pocket-paging service is part of that telephone public utility business. This service is a logical extension of and improvement of existing telephone service. It increases the number of completed telephone calls by making it possible for a caller to contact a subscriber even when the subscriber is away from his regular telephone. (See *Radio Relay Corp. v. FCC* (2d Cir. 1969), 409 F.2d 322, 326; *Commercial Communications, Inc. v. Public Utilities Com.* (1958), 50 Cal. 2d 512, 523, 327 P.2d 513, 519, *appeal dismissed and cert. denied* (1959), 359 U.S. 341, 3 L. Ed. 2d 927, 79 S. Ct. 896; *Malis v. General Telephone Co.* (Cal. Pub. Util. Com. 1961), 40 Pub. U. Rep. 3d 315; *Radio-Fone, Inc. v. A.T.S. Mobile Telephone, Inc.* (1972), 187 Neb. 637, 643-44, 193 N.W.2d 442, 447; *Radio Common Carriers of New York, Inc. v. New York State Public Service Com.* (1974), 79 Misc. 2d 600, 360 N.Y.S.2d 552, 556-57, *aff'd* (1975), 48 App. Div. 2d 756, 368 N.Y.S.2d 341; *State ex rel. Utilities Com. v. Two Way Radio Service, Inc.* (1968), 272 N.C. 591, 601, 158 S.E.2d 855, 863; *Data Transmission Co. v. Corporation Com.* (Okla. 1976), 561 P.2d 50, 56-57; *Re Mobilfone Corp.* (Minn. Pub. Serv. Com. 1969), 81 Pub. U. Rep. 3d 57, 61-62.) Moreover, if the pocket-paging service were not part of the business of transmitting telephone messages between points within

this State, it might be questioned whether those providing that service are public utilities subject to regulation by the Commission. (*Radio Telephone Communications, Inc. v. Southeastern Telephone Co.* (Fla. 1964), 170 So. 2d 577, 581; *Radio Relay Corp. v. Public Utilities Com.* (1976), 45 Ohio St. 2d 121, 341 N.E.2d 826, 830-31; *Wilson Communications, Inc. v. Calvert* (Tex. 1970), 450 S.W.2d 842; Ill. Rev. Stat. 1971, ch. 111 2/3, par. 10.3; *Illinois-Indiana Cable Television Association v. Commerce Com.* (1973), 55 Ill. 2d 205.) We conclude that Bell's authorization to transact telephone public utility business includes the authority to provide the paging service.

Plaintiffs argue that *State Public Utilities Com. v. Noble* (1916), 275 Ill. 121, militates against our view. We do not agree. There the basic issue was whether the proposed construction and extended service converted what had been a private operation into a public utility requiring certification, a question not present here. Section 55 does require a certificate prior to construction of new equipment and facilities. But it also provides an exception for such new equipment or facilities as are an extension of or in addition to existing equipment and facilities. That exception has been interpreted by the Commission for more than half a century to exempt from certification requirements a telephone company's construction of new plant, equipment, property, or facilities to be used in providing new telephone services. There has been, during that period, no legislative action indicative of dissatisfaction with the Commission's construction. Substantial weight is accorded such long-standing interpretation of a statute by the administrative body charged with its application. (*Cronin v. Lindberg* (1976), 66 Ill. 2d 47, 63; *Mississippi River Fuel Corp. v. Illinois Commerce Com.* (1953), 1 Ill. 2d 509, 514.) In our judgment, the Commission properly found the construction of new equipment and facilities by Bell was simply an extension

of or addition to existing facilities and equipment as these terms were intended by the legislature when it adopted the Public Utilities Act.

Plaintiffs refer us to their certificates which contain only limited authorizations. Radio Relay may transact a one-way-radio-paging public utility business. Rogers may transact a mobile-radio-telephone utility business and operate and maintain an automatic, landline-interconnected selected-paging signaling service. Plaintiffs argue that Bell ought to have to obtain a similar certificate prior to providing pocket-paging service. But this argument overlooks a crucial difference in their respective circumstances: Plaintiffs had no prior authorization, as did Bell, to operate a telephone service of which the current paging service is simply an extension.

We do not find plaintiffs' remaining arguments persuasive. Despite the statutory "grandfather rights" clause applicable to Bell, plaintiffs would require any covered public utility to nevertheless obtain a certificate, an argument unsupported by logic or historical practice. Nor is their argument that the clause applies only to services provided at the time of the adoption of the Act helpful. The clause authorizes Bell's continued operation of its telephone public utility business, unlike the statutes in the cases relied on by plaintiffs which enumerated specific services. Nor has Bell let its rights lapse. It has continued to exercise its authority to transact a telephone business; that it has not always offered a paging service as a part thereof does not require certification now since that service is a part of the "grandfather" authority. It is even possible, since counsel stated during oral argument that certificates of public convenience and necessity have now been issued to Bell for all 39 exchanges, that this issue may be moot, except for the fact that it is not clear whether the 27 newly obtained certificates all contain the broad language found in the 12 earlier certificates.

In view of our holding that the paging service is simply an extension of Bell's telephone business which it was conducting in the areas here involved at the time of plaintiffs' entry into those areas, it is apparent that plaintiffs' first-in-the-field argument is not applicable.

For the reasons stated, we affirm the judgments of the appellate court and the circuit court.

*Judgments affirmed.*

MR. JUSTICE MORAN took no part in the consideration or decision of this case.