ILLINOIS CONSOLIDATED TELEPHONE COMPANY, Plaintiff-Appellee and Cross-Appellant, v. ILLINOIS COMMERCE COMMISSION, Defendant-Appellant and Cross-Appellee.

Fourth District   No. 16905

Opinion filed August 20, 1981.

Tyrone C. Fahner, Attorney General, of Chicago (Hercules F. Bolos, Special Assistant Attorney General, and Allen C. Wesolowski and James E. Weging, Assistant Attorneys General, of counsel), for appellant.

Douglas G. Brown and Gary L. Smith, both of Douglas G. Brown, P. C., of Springfield, and Richard F. Record, Jr., of Craig & Craig, of Mattoon, for appellee.

Mr. JUSTICE LONDRIGAN delivered the opinion of the court:

Aircall Communications, Inc. (Aircall), sought a certificate of public convenience and necessity from the Illinois Commerce Commission (Commission). Aircall proposed to conduct both tone-only and tone-and-voice radio paging operations in the Charleston-Mattoon area of Illinois. Illinois Consolidated Telephone Company (Illinois Consolidated), who was already operating a paging service in this area, was allowed to intervene. The Commission granted Aircall a certificate. Illinois Consolidated's request for a rehearing was denied. Illinois Consolidated then appealed the cause to the circuit court of Coles County. That court reversed and remanded the Commission's order. The Commission now appeals the circuit court's order. Illinois Consolidated cross-appeals.

The main issue here is whether radio paging companies are public utilities under the statutory definition contained in section 10.3 of the Public Utilities Act (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 10.3).

■■■ The Commission possesses only that jurisdiction conferred upon it by the legislature. (*Lambdin v. Commerce Com. ex rel. Assumption Mutual Telephone Co.* (1933), 352 Ill. 104, 185 N.E. 221; *Illinois-Indiana*

*Cable Television Association v. Illinois Commerce Com.* (1973), 55 Ill. 2d 205, 302 N.E.2d 334.) Therefore, if radio paging systems are not within the statutory definition of a public utility, the Commission would have no jurisdiction over those services, and radio paging systems would not be required to obtain certificates of public convenience and necessity from the Commission. It must be noted that the Commission did not argue lack of jurisdiction in any of the proceedings below. It also failed to raise this issue in its notice of appeal. However, lack of subject matter jurisdiction may be raised at any time. (*Michelson v. Industrial Com.* (1941), 375 Ill. 462, 31 N.E.2d 940.) Subject matter jurisdiction cannot be conferred upon a court by consent of the parties or by their acquiescence. This issue can be raised even though a party fails to include it in its notice of appeal. *Talandis Construction Corp. v. Illinois Building Authority* (1978), 60 Ill. App. 3d 715, 377 N.E.2d 237.

The pertinent portions of section 10.3 of the Public Utilities Act are:

" 'Public utility' means and includes every corporation, company, association, joint stock company or association, firm, partnership or individual, their lessees, trustees, or receivers appointed by any court whatsoever that owns, controls, operates or manages, within this State, directly or indirectly, for public use, any plant, equipment or property used or to be used for or in connection with, or owns or controls any franchise, license, permit or right to engage in:

 ❋  ❋  ❋

b. the transmission of telegraph or telephone messages between points within this State." (Ill. Rev. Stat. 1979, ch. 111 2/3, par. 10.3.) The question here is whether radio paging companies can be said to transmit telephone messages between points within this State. The Commission argues that radio paging companies are merely customers of telephone companies and that services provided by these paging companies are not within the plain and commonly ascribed meaning of telephone service. Aircall proposed to operate a one-way paging system. In this type of system, a two-way conversation is not possible between the client and the person placing the initial call to the paging service. A subscriber to a paging service is given a receiver which is tuned to the frequency of a radio wave transmission. When another person wishes to contact the client, he calls the radio paging company. At this point, a paging service employee or its automatic equipment initiates the transmission of a radio signal which activates the client's receiver. The pocket-size receiver then emits either a short sound followed by a 12-second voice message or the sound alone. After receiving the signal, the client uses a telephone to call the paging service for further information. In the case of a tone-and-voice pager, the client may have enough information to

call the paging party. Aircall's service would have been interconnected with the telephone system of the intervenor, Illinois Consolidated. The paging company would not own or operate telephone lines, equipment, or facilities.

■■ Section 10.3 of the Public Utilities Act states that a public utility includes companies which control, operate, or manage any plants, equipment, or property used or to be used for or *in connection with* the transmission of telegraph or telephone messages. We find that the equipment and property of paging systems are used "in connection with" the transmission of telephone messages and thus a paging service would fall under the statutory jurisdiction of the Commission.

In the past, we have treated paging services as public utilities. In *Danville Redipage, Inc. v. Illinois Commerce Com.* (1980), 87 Ill. App. 3d 787, 410 N.E.2d 328, Tel-Illinois, Inc., sought a certificate of public convenience and necessity to conduct an interconnected paging operation in Vermilion County. Redipage already provided noninterconnected manual paging service for the same area. (In a noninterconnected service, after the telephone call from a person wishing to speak to the client is made, a paging service employee must transmit the radio signals to the client's receiver. In an interconnected service, the radio signal is transmitted to the receiver automatically.) The Commission argued that Redipage was not a public utility because it had never received a certificate of public necessity and convenience. We said that an absence of such a certificate does not mean that Redipage was not in fact a utility supplying services and entitled to be considered first-in-the-field. We concluded that Redipage was a public utility. By remanding that cause so that the Commission could make findings relevant to the issue of whether or not Redipage was capable of and could provide the necessary service, we directed the Commission to treat a paging service as a public utility. In the instant case, the trial court based its order reversing and remanding the Commission's decision upon *Danville Redipage, Inc.* The Commission was directed to make specific findings regarding Illinois Consolidated's ability to provide paging services to the public pursuant to its status as "first-in-the-field." We find both the trial court's reversal and remandment and its reliance on *Danville Redipage* to be proper.

Similarly, the Illinois Supreme Court implied that a paging service was a public utility in *Radio Relay Corp. v. Illinois Commerce Com.* (1977), 69 Ill. 2d 95, 370 N.E.2d 528. Illinois Bell possessed certificates of public convenience and necessity for its telephone business. Bell proposed to buy new equipment and facilities and operate a radio paging service. The supreme court concluded that Illinois Bell's authorization from the Commission to transact telephone public utility business included the authority to provide the paging business. The court said:

"Bell is admittedly authorized to transact a public utility telephone business in the area involved in this case, and it is clear to us that providing a one-way-radio pocket-paging service is part of that telephone public utility business. This service is a logical extension of and improvement of existing telephone service. It increases the number of completed telephone calls by making it possible for a caller to contact a subscriber even when the subscriber is away from his regular telephone." (69 Ill. 2d 95, 100, 370 N.E.2d 528, 530.)

Also, New York has held radio paging systems to come under the jurisdiction of its State commerce commission. *Digital Paging Systems, Inc. v. Public Service Com.* (1974), 46 App. Div. 2d 93, 360 N.Y.S.2d 931; *Radio Common Carriers of New York, Inc. v. New York State Public Service Com.* (1975), 48 App. Div. 2d 756, 368 N.Y.S.2d 341.

The Commission relies on *Illinois-Indiana Cable Television Association,* wherein the supreme court held that cable television was not within the meaning of a public utility as defined by section 10.3(b) of the Public Utilities Act. The court said that the words "telephone service" should be given their plain and commonly ascribed meaning, and that cable television did not fit within that meaning. We do not find this case dispositive because the nature of the services offered by cable television is so unlike the nature of the services offered by radio pagers. The supreme court compared the public function of telephone and telegraph services to that of cable television. It said that the function of the telephone and telegraph is to communicate messages between their respective subscribers. A radio pager has that function. Cable television does not. When the words "telephone service" are given their plain meaning, a radio paging system still falls within that meaning.

A radio paging service must obtain, from the Federal Communications Commission, the right to use a specific frequency. Control of these frequency signal awards is exclusively Federal (47 U.S.C. §301 (1976).) Through its application of the first-in-the-field doctrine, the Commission could deny a holder of an FCC license the right to use its frequency authorization. The Commission claims that this result triggers the application of Federal preemption.

■■ The doctrine of Federal preemption arises from the supremacy clause of the United States Constitution (U.S. Const., art. VI, cl. 2). This clause states, in pertinent part, that valid Federal statutes and treaties are declared to be "the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." When a clear conflict exists between State and Federal statutes, the State legislation may be invalidated by invoking the supremacy clause. The Commission contends that

such a conflict exists between Federal frequency signal awards and the Illinois first-in-the-field doctrine. We disagree. Federal Communications Commission regulations and rulings cited by Illinois Consolidated reveal convincingly that the Federal Communications Commission does not intend to preempt State regulation of radio paging systems. Section 21.13(f)(2) of Federal Communications Commission Rules (47 C.F.R. §21.13(f)(2) (1980)) provides that the FCC can grant a frequency to a radio paging operation prior to State certification. However, the Federal license to operate would expire 240 days from the date of issuance if State certification was not obtained by that time. This regulation clearly indicates the FCC's willingness to work within State regulation of radio paging services. It recognizes that the State also has the right to regulate these paging companies. Federal Communications Commission 78—559 states that the regulation will "preserve federal-state jurisdictional boundaries by allowing us to find an applicant qualified under the Federal standards, subject to meeting whatever requirements are additionally imposed by the state." It is also significant that Aircall's proposed service here would be a totally intrastate operation. Federal law expressly exempts "intrastate communication service by wire or radio of any carrier" from the general regulatory power of the FCC. (47 U.S.C. §152(b)(1976).) Thus, Federal regulations and law reveal that certification of radio paging companies by the Illinois Commerce Commission is not preempted by the Federal Government.

■■ We agree with the trial court that the Commerce Commission must make a determination on whether Illinois Consolidated can meet the present and future needs of radio paging customers in the Charleston-Mattoon area. Our review of the record indicates that this problem has not been sufficiently addressed. The Commission argues that Aircall established a need for paging in the Charleston-Mattoon area at the original Commission hearing. Aircall did present evidence that community interest in their services existed. However, under a first-in-the-field determination, this interest might not be sufficient to allow Aircall to begin operations. Illinois Consolidated must be allowed an opportunity to establish that it could take care of this potential customer interest. If Illinois Consolidated can accommodate this interest, then, under the first-in-the-field doctrine, Aircall would not be allowed to enter the radio paging services field in this area.

The Commission concludes its appeal by raising several issues pertaining to the scope of review of a Commission order. As we have agreed with the trial court that the evidence must be reevaluated in terms of Illinois Consolidated's first-in-the-field status, we need not address other problems arising from the Commission's order. The Commission also complains of several assertions made by Illinois Consolidated in its trial

brief. There is no indication in the record that the trial court relied upon these assertions in formulating its order.

In its cross-appeal, Illinois Consolidated contends that the Commission's order was against the manifest weight of the evidence. Essentially, all of Illinois Consolidated's arguments center on the question of whether or not Aircall's services were needed in the Charleston-Mattoon area. Illinois Consolidated discusses "need" in the context of the first-in-the-field doctrine. All questions concerning first-in-the-field should be decided upon remand as sufficient evidence in regard to this area is lacking in the record before us.

For the foregoing reasons, we affirm the trial court's order reversing and remanding this cause to the Commission.

Affirmed.

TRAPP, P. J., and WEBBER, J., concur.