CONLEY, J. T. C.
Plaintiff is in the business of selling, leasing, installing and maintaining certain communications equipment commonly referred to as pagers and mobile radio telephones. As the result of an audit the Director of the Division of Taxation imposed a sales tax deficiency assessment on plaintiff with respect to sales, leases and installations of such equipment. Plaintiff instituted this action to challenge the assessment.
Plaintiff’s primary argument, that the assessment should be set aside, is based on a claim that the transactions taxed by the Director fall within a statutory exemption. The exemption relied on by plaintiff is N.J.S.A. 54:32B-8.13[1], which provides as follows:
*423 Receipts from the following are exempt from the tax imposed under the Sales and Use Tax Act:
c. Sales of telephone lines, cables, central office equipment or station apparatus, or other machinery, equipment or apparatus, or comparable telegraph equipment, for use directly and primarily in receiving at destination or initiating, transmitting and switching telephone or telegraph communication.
The exemptions granted under this section shall not be construed to apply to sales, otherwise taxable, of machinery, equipment or apparatus whose use is incidental to the activities described in paragraph ... c. of this section.
Plaintiff contends that its pagers and radio telephones are telephone equipment used directly and primarily in receiving at destination or initiating or transmitting telephone communications. The Director contends that plaintiff’s pagers and telephones are radio equipment used in radio communication and are used only incidentally rather than directly and primarily in telephone communication.
The matter was presented on a stipulated factual record. Neither party offered factual or opinion evidence on the issue of what constitutes “telephone communication” as opposed to “radio communication.” Instead, the parties simply agreed on a description of how plaintiff’s equipment operates and how it is used by plaintiff’s subscribers. The parties also stipulated that plaintiff is a radio common carrier, licensed and regulated by the Federal Communications Commission. Plaintiff operates under tariffs promulgated by the FCC and its business is dependent to some extent on the number of channels granted for its use by the FCC. Plaintiff’s New York operations are subject to approval by the New York Public Service Commission, but the New Jersey Public Utilities Commission does not regulate plaintiff’s operations in any manner.
All of plaintiff’s pagers are small radio receivers powered by batteries. A person wishing to page one of plaintiff’s subscribers dials an ordinary seven-digit telephone number followed by coded digits, thereby activating plaintiff’s computerized automatic paging terminal. The terminal initiates a radio transmission that causes the pager to “beep.” For long distance calls the caller may telephone plaintiff’s operator at a toll-free number *424 and give the operator the pager number to be reached. Plaintiff’s operator then uses a remote electronic device to send a signal by telephone line to plaintiff’s automatic paging terminal, initiating the radio transmission to the subscriber’s pager. The latter procedure can be used to transmit either a signalling tone or a brief voice message. Since pagers provide only one-way communication, when a subscriber to plaintiff’s pager receives a radio transmission he must make an ordinary telephone call to a designated telephone number to ascertain his message (beyond any brief voice message) and to communicate with his caller.
Plaintiff’s mobile radio telephones are radio transmitters as well as receivers. A person wishing to call a subscriber of plaintiff’s radio telephone service places a regular telephone call to plaintiff’s operator who then initiates a coded signal from plaintiff’s radio transmitter to the mobile telephone. When the signal is transmitted to an activated radio telephone it causes the telephone to ring. If the telephone is not answered a red call light comes on and stays on and/or the vehicle’s horn sounds, depending on the options selected by the subscriber. The stipulation of facts filed by the parties does not indicate whether a subscriber, upon receipt of one of these signals, may simply pick up the telephone instrument and communicate with the caller or whether the subscriber must then initiate a call. When plaintiff’s subscriber does initiate a call, he signals plaintiff’s operator, who connects the subscriber with telephone company facilities using “interconnect equipment” of New Jersey Bell Telephone Company, thus giving the subscriber the same exchange and toll facilities available from a public telephone. Plaintiff’s operator then places the call, using the subscriber’s telephone credit card number or by calling collect so that all billing for the actual telephone call is done by the telephone company. Plaintiff bills its subscribers separately on a time basis for its services.
For all its radio transmissions plaintiff uses both very high frequency (VHF) and ultra-high frequency (UHF) radio channels. Because radio transmissions must be. both wide enough and at a frequency at which electromagnetic energy can be *425 radiated through space, plaintiff’s equipment operates on frequencies which are considerably higher than the audio frequencies used for voice transmission over telephone wires.
It is apparent from the facts set forth above that plaintiff’s pagers and mobile radio telephones are basically different types of equipment. In the interest of clarity I will consider the taxability of each type of equipment separately. For the reasons that follow, it is my conclusion that the tax consequences differ with regard to pagers and mobile radio telephones.
Plaintiff first claims a sales tax exemption for the sale and lease of its pagers. The statutory exemption relied on by plaintiff was created by the Legislature for telephone and telegraph equipment and other equipment “for use directly and primarily in . . . telephone or telegraph communication.” It is my opinion that plaintiff’s pagers are not used “directly” in telephone communication. Pagers are radio receivers that serve as signalling devices. They are activated directly by a radio signal initiated by plaintiff’s computer terminal. The pagers have no necessary connection with telephone communication. The fact that plaintiff’s computer is programmed to respond to a telephone signal does not make a difference; the computer could be programmed to respond to a variety of signals. The involvement of the telephone at most is indirect. Pagers are used as a means of alerting a subscriber to the fact that a caller was attempting to reach him on the telephone. Pagers are in some ways analogous to a handwritten note informing a telephone subscriber that he has received a call. There are any number of other means of conveying the message that telephone contact has been attempted. The Legislature did not intend to exempt such signalling devices when it adopted N.J.S.A. 54:32B-8.13.
Mobile radio telephones present a more difficult issue. In support of this exemption claim plaintiff relies primarily on N. J. Bell Tel. Co. v. Taxation Div. Director, 152 N.J.Super. 442, 378 A.2d 38 (App.Div.1977), certif. den., 75 N.J. 594, 384 A.2d 824 (1978). In that case the court considered the sales tax exemp *426 tion for sales of “telephone or telegraph services delivered to consumers through .. . lines.” N.J.S.A. 54:32B-8.7 (formerly N.J.S.A. 54:32B-8(g)). The exemption was construed in two respects: first, as it applied to nonrecurring charges for service connections, installations, moves and for changes of all types of telephone facilities, and second, as it applied to one-way audio and video transmission services. With respect to the first aspect of the case pertaining to nonrecurring charges, the court noted that there were express exemptions for “telephone services” under N.J.S.A. 54:32B-8.7 and for sales of telephone communication equipment in N.J.S.A. 54:32B-8.13, the section at issue in this matter. The court held as follows:
Under our reading of the act we perceive a clear intention by the Legislature to exclude and exempt from taxation all revenues for “telephone services,” which include those related to service connections, moves and changes, [at 446, 378 A.2d 38]
We believe that the Legislature adopted this statutory pattern so as to insure that “telephone services” in their broadest sense would be exempt from sales taxation. The expressed exemptions were added to guard against the possibility that those generalized services which were specifically subjected to tax would not be erroneously taxed against the telephone consumer, [at 447, 378 A.2d 38]
Since the only issue involved in the first part of the court’s discussion involved the sale of services and specifically the exemption for “telephone services” set forth in N.J.S.A. 54:32B-8.7, the court’s holding was limited to the sale of services and did not implicate sales of tangible personal property as is involved in the present case. However, the court’s citation of the exemption for sales of telephone communication equipment suggests that the court viewed similarly the exemptions for sales of telephone services and telephone equipment.
The second part of the court’s opinion also dealt only with the taxability of the sale of services rather than the sale of tangible personal property. The court held:
The telephone business is a public utility. Audio and video transmissions are communication services included within its business. At the time of the enactment of the Sales Tax Act, the Legislature knew or should have known that telephone companies were providing audio and video transmissions.... The science of communications is constantly being improved and modernized.
*427 .. . [I]n using the words “telephone service” in the Section 8(g) exemption, the Legislature included therein communication services as provided by telephone companies as of that date.
Audio and video transmissions constitute a “telephone service” as contemplated by Section 8(g), therefore, the revenue derived therefrom is specifically exempted from the Sales Tax Act. [Id. at 449, 378 A.2d 38]
Plaintiff argues that both parts of the court’s holding regarding the meaning of “telephone services” in the context of the general taxability of services requires a broad interpretation of the term “telephone communication” as used in the context of the taxability of the sale of tangible personal property, as is at issue in the present case. The Director, on the other hand, argues that the same case supports his position that the Legislature intended to exempt only the sale of telephone equipment that is part of an entire communications system operated by a public utility.
I find nothing to support the Director’s contention. Indeed, it is significant that the Legislature for exemption purposes used the term “telephone or telegraph communication” and chose not to use the words “telephone and telegraph system” that it used to define “public utility” in N.J.S.A. 48:2-13. In fact, the term “telephone or telegraph communication” is broader than that used by the Legislature to apply to regulated telephone and telegraph companies in connection with the taxation of their personal property (and that of messenger systems) by local taxing districts rather than by the State (N.J.S.A. 54:4-1 and 54:4-2.28 et seq.; N.J.S.A. 54:11A-1 et seq.); in connection with the taxation of their franchises (N.J.S.A. 54:30A — 16 et seq.), and in connection with their authorization to exercise the power of eminent domain (N.J.S.A. 48:3-17.6 and 48:17-9.1). I conclude from the Legislature’s use of the broader language that it did not intend to limit this exemption to equipment of regulated telephone and telegraph companies. On the contrary, as suggested by the court in the N. J. Bell Tel. case, the Legislature established a broad exemption for telephone services and for equipment used in telephone communication. The exemption is not limited by the nature of the provider of the services and equipment but only by the nature of the services and equipment themselves.
*428 It is well known, as argued by plaintiff, that telephone companies regulated as public utilities make use of radiowave, microwave, satellite, laser and digital transmissions, as well as wire in “telephone communication.” Although some of these forms of transmission were perhaps not prevalent when the Sales and Use Tax Act was adopted in 1966, the Legislature was undoubtedly aware as of then that everyday telephone communication by regulated telephone companies utilized radio transmissions as well as wire transmissions. The sales tax exemption for the sale or lease of telephone equipment for use directly and primarily in telephone communication must be construed in light of this knowledge. The Legislature gave no suggestion in the language it used in N.J.S.A. 54:32B-8.13 that it intended to limit the sales tax exemption to telephone equipment used in telephone communication by wire. The particular method of voice transmission used by any specific piece of equipment is therefore not relevant as long as the equipment is used in telephone communication.
The court is mindful that a statutory tax exemption provision should be strictly construed against the claimed exemption to insure that only those clearly intended by the Legislature are relieved of the public burden of taxation. Container Ring Co. v. Taxation Div. Director, 1 N.J. Tax 203 (Tax Ct. 1980). Nonetheless, the court cannot read into the language of N.J.S.A. 54:32B-8.13 anything to distinguish between plaintiff’s mobile radio telephone equipment and regular telephone receivers sold or leased by regulated telephone companies. Their function is the same. The Director contends there is a difference because radio telephone equipment is dependent on an interconnection with the complete telephone communications system of New Jersey Bell Telephone Company. This dependency, however, does not mean that plaintiff’s equipment is used indirectly in the communication process — the links of a chain are dependent on each other but all links are used directly to form the chain.
A determination that mobile radio telephones are used directly in telephone communication is supported by the reasoning of *429 other courts which have held in the different context of public utility law that radio telephones are used in telephone communication and that state public utility commissions which regulate telephone communication therefore have jurisdiction to regulate certain aspects of their use. For example, in Commercial Communications, Inc. v. Public Utilities Comm., 50 Cal.2d 512, 327 P.2d 513 (1958), app. dism. and cert. den., 359 U.S. 119, 341, 79 S.Ct. 722, 896, 3 L.Ed.2d 674, 927 (1959), the California Supreme Court held that the state’s Public Utilities Commission had properly exercised its jurisdiction over a public utility when it established tariffs for the use of mobile radio telephone systems. Construing California’s constitutional and statutory language concerning public utilities, the court said:
The real issue presented is whether the service offered by the proposed tariff is “for the transmission of telephone messages” or “in connection with and to facilitate communication by telephone.”
The word “telephone” is not defined in the code. In its narrow sense “telephone” refers to the instrument by which telephony is achieved. It is defined in Webster’s New International Dictionary, 2d edition as “An instrument for reproducing sounds, especially articulate speech, at a distance.” In defining “telephony” the Encyclopaedia Britannica (1954 ed.) states “In a broad sense the term telephone or telephony includes the entire art of speech transmission with the many accessories and operating methods which research, development and invention have supplied to facilitate and extend conversation at a distance by electrical means.” As this court pointed out in Television Transmission, Inc. v. Public Utilities Commission, 47 Cal.2d 82, 88, 301 P2d 862, 865, in telephony “one may carry on a two-way communication by speaking as well as by listening” and it is distinguishable from radio broadcasting in that the latter “is more akin to that of music halls, theaters, and newspapers.” While mobile communication involves an application of the art of radio to telephone communication, it is more akin to telephony than to radio broadcasting.
In common understanding the communication effected by private mobile systems would appear to be a telephone communication. [327 P.2d at 518-519]
Cf. Radio Relay Corp. v. Illinois Commerce Comm ’n, 69 Ill.2d 95, 12 Ill.Dec. 724, 370 N.E.2d 528 (Sup.Ct.1977) (dealing with pagers); Application of Radio Common Carriers of New York, Inc., 79 Misc.2d 600, 360 N.Y.S.2d 552 (Sup.Ct.1974), aff’d, 48 App. Div.2d 756, 368 N.Y.S.2d 341 (App.Div.1975) (dealing with both pagers and radio telephones); Application of Radio-Fone, Inc., 187 Neb. 637, 193 N.W.2d 442 (Sup.Ct.1972) (dealing with both *430 pagers and radio telephones); Radio Relay Corp. v. F. C. C., 409 F.2d 322 (2 Cir. 1969) (dealing with pagers). Contra, In re Complaint of Cincinnati Radio-Telephone Systems, Inc., 45 Ohio St.2d 121, 341 N.E.2d 826 (Sup.Ct.1976) (dealing with pagers).
It is my conclusion that plaintiff’s mobile radio telephones are used directly in telephone communication so that their sale and lease are exempt from sales tax pursuant to N.J.S.A. 54:32B-8.13. The Legislature may not have had radio telephones in mind when it adopted the exemption provision but it used language that clearly pertains to plaintiff’s equipment. The meaning of words evolves to encompass changing experiences, and if technological advances can appropriately be described within the confines of words used by the Legislature in an earlier day it is not for the court to attempt to modify the statutory language. The Legislature can adopt more restrictive or precise terminology to deal with developments it did not anticipate, but the court can deal only with the language it encounters. Cf. Spencer Gifts, Inc. v. Taxation Div. Director, 3 N.J.Tax.482, 496-512 (Tax Ct. 1981) (in which the court discusses whether the leasing of computer information is the leasing of tangible personal property subject to sales or use tax).
Plaintiff raises one other point that should be addressed. It argues that the Director has engaged in selective enforcement of the Sales and Use Tax Act by assessing a tax against plaintiff when he has not done so against New Jersey Bell Telephone Company with respect to similar pagers and mobile telephones. Plaintiff contends that such allegedly discriminatory treatment is prohibited by the Equal Protection Clause of the United States Constitution and that therefore the court cannot affirm the assessment at issue in this case. This argument is moot, of course, as it pertains to the sale and lease of plaintiff’s radio telephones because this court has held that they are exempt, but plaintiff would press the point as it involves the sale and lease of its pagers.
I find the argument to be without merit. The sales and use tax is a “self-assessing tax” and as such it should be *431 reported and paid by the taxpayer. The Director does not make an initial assessment for each taxpayer; rather, he conducts selective audits of taxpayers. If an auditor finds a tax deficiency during an audit, the Director then makes a deficiency assessment. Cf. Vicoa Inc. v. Taxation Div. Director, 166 N.J.Super. 496, 502, 400 A.2d 105 (App.Div.1979); Bristol Meyers Co. v. Taxation Div. Director, 3 N.J.Tax 451, 458 (Tax Ct. 1981). The fact that one taxpayer is subjected to an audit and assessment and that another might have been but was not, cannot establish a denial of equal protection absent a showing that the State’s action was based upon an unjustifiable standard, such as race, religion or some other arbitrary classification. In re F. W. Koenecke & Sons, Inc., 533 E.2d 1020, 1023 (7 Cir. 1976); Monmouth Airlines, Inc. v. Taxation Div. Director, 2 N.J.Tax 47, 55 (Tax Ct. 1980). There has been no such proof in this case.
Pursuant to R8:9- -3 the parties shall submit agreed computations within 15 days of the receipt of this opinion so that judgment may be entered affirming the Director’s assessment insofar as it pertains to plaintiff’s pagers and vacating the assessment insofar as it pertains to plaintiff’s radio telephones.

 This exemption was codified as N.J.S.A. 54:32B-8(m)(3) and (4) prior to the enactment of L.1980, c. 105, § 25, effective September 11, 1980.